[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-11373
_____

D.C. Docket No. 97-01390 CV-6-ORL

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 24, 2002
THOMAS K. KAHN
CLERK

WILLIAM RICCARD,

Plaintiff-Appellant,

ROBERT W. RASCH,

Interested Party - Appellant,

versus

PRUDENTIAL INSURANCE COMPANY,

Defendant-Appellee.

_____

No. 01-15209
_____

D.C. Docket No. 97-01390 CV-ORL-31

WILLIAM RICCARD,

Plaintiff-Appellant,

versus

PRUDENTIAL INSURANCE COMPANY
OF AMERICA, a New Jersey corporation,

Defendant-Appellee.

_____

No. 01-15219

_____

D.C. Docket No. 99-01266 CV-ORL-19

WILLIAM RICCARD,

Plaintiff-Appellant,

versus

PRUDENTIAL INSURANCE COMPANY OF AMERICA,
a foreign corporation,

Defendant-Appellee,

MARY ANN CASO, Claims Administrator for the
Prudential Insurance Company of America, Inc.,
MARK MARTIN, General Manager for the
Prudential Insurance Company of America, Inc.,

Defendants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(September 24, 2002)**

Before EDMONDSON, Chief Judge, CARNES and SILER[*], Circuit Judges.

CARNES, Circuit Judge:

---

[*]Honorable Eugene E. Siler, Jr., U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

William Riccard was demoted by his employer, Prudential Insurance Company, and later left its employ after being placed on disability. The result of Riccard's demotion was to lessen the amount of disability payments he received. In response, Riccard launched a bitter campaign against Prudential that has included the filing of four lawsuits; the filing of complaints alleging misconduct by Prudential with the Securities and Exchange Commission, the United States Attorney's Office, the Banking and Insurance Department of one state, and the Agricultural Department of another; the filing of a motion for sanctions against Prudential and some of the attorneys representing it; and the filing of ethical complaints with the Bar Associations of two states against those attorneys. The district court has attempted to dispose of Riccard's lawsuits in a principled fashion and to do what it could to minimize the burden of his many filings on the judicial system and others.

We have before us appeals that Riccard has filed contesting orders and judgments, including sanctions and civil contempt orders, entered against him in the second and third of his four lawsuits. His attorney, Robert Rasch, is also an appellant to the extent necessary to challenge sanctions imposed against Rasch. In all, Riccard and Rasch challenge a total of nine orders the district court entered in the two lawsuits. We will take up each of them after setting out some background.

# I. BACKGROUND

Riccard began working for Prudential in 1970 as a sales representative and was eventually promoted to sales manager. In July 1995, he took leave from his job on short-term disability, and in September of that year his doctor informed Prudential that Riccard could return to work. Prudential requested that he return. After two weeks back at work, Riccard allegedly suffered an "industrial accident" and again took a short-term disability leave. In November 1995, he was demoted from his position as sales manager back to sales representative. He was subsequently placed on long-term disability leave and received disability payments from Prudential until November 1999, at which time he began collecting his pension.

Approximately a year after going on long-term disability, Riccard began filing a series of lawsuits against Prudential. We will refer to them in the order in which they were filed as Riccard I - IV.

## A. Riccard I

In September 1997, Riccard sued Prudential for breach of contract, alleging

4

among other things, that Prudential had violated their employment agreement by demoting him from sales manager to sales representative which resulted in his disability benefits being lower than they would have been had he not been demoted. William Riccard v. The Prudential Ins. Co. of Am., No. 97-1224-CV-ORL-19C (1997). On Prudential's motion the district court ordered the case to arbitration after both sides acknowledged that the plain language of a National Association of Securities Dealers ("NASD")[1] form agreement Riccard had signed during his employment gave Prudential the right to insist upon arbitration of their dispute. An NASD arbitration panel rejected Riccard's claims, and the district court confirmed the panel's decision.

Riccard later moved to overturn the district court order confirming the panel's decision on the ground that he had learned after the case had been sent to arbitration that Prudential was not a member of the NASD at the time. The district court denied Riccard's motion and a subsequent motion for reconsideration, and Riccard did not appeal that decision or the judgment entered in conformity with it.

## B. Riccard II

After filing a complaint with the Equal Employment Opportunity

---

[1]The NASD is a self-regulating organization of securities dealers created under the authority of the Securities and Exchange Commission. See Association of Inv. Brokers v. SEC, 676 F.2d 857, 859 (D.C. Cir. 1982).

Commission ("EEOC") in April 1996 and being issued a "right to sue" letter by the Commission in September 1997, Riccard filed his second lawsuit against Prudential, in November 1997, this time claiming age and disability discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Florida Civil Rights Act.[2]  On Prudential's motion, the district court compelled the case to arbitration, as it had done in Riccard I, on the basis of the NASD agreement Riccard had signed while employed by Prudential.

Riccard contended (and still contends) that Prudential's non-membership in the NASD at the time his lawsuit was filed, though it was a member at the time of the alleged events giving rise to the claims and at the time Riccard filed the EEOC charge, took the case out from under the arbitration agreement. The district court, however, determined that Prudential was an intended third party beneficiary of the arbitration agreement with standing to enforce the agreement naming as Riccard's

_____

[2] The events giving rise to the discrimination and retaliation claims took place in 1995. They were allegedly retaliatory acts taken against Riccard by a supervisor after he found out that Riccard had complained to Prudential's "home office" about discriminatory remarks the supervisor had made, and an alleged failure by Prudential to make reasonable accommodations for Riccard after he was forced to come back to work despite medical orders to the contrary.

"member firm" Prudential's subsidiary Pruco, which was an NASD member during the entire period – including the time the lawsuit was filed.

Riccard brought to this Court an interlocutory appeal of the district court's order compelling arbitration. We dismissed the appeal after the parties jointly stipulated to a dismissal with prejudice because the appeal had been taken prematurely.

The NASD arbitration panel which heard Riccard's second case dismissed all of his claims with prejudice after holding approximately fifty evidentiary sessions in which twenty-two witnesses testified. The district court subsequently confirmed the arbitration panel decision in favor of Prudential and denied Riccard's motion to vacate the decision. Riccard has now timely appealed the district court's earlier order compelling arbitration and its order confirming the arbitration award.

## C. **Riccard III**

In October 1999, Riccard filed his third lawsuit against Prudential, alleging, among other things, fraudulent misrepresentation and deceit in the denial of certain disability and medical benefits in violation of Employee Retirement Income Security Act of 1974 ("ERISA"). In a second amended complaint he restyled his claim as one for breach of fiduciary duty in connection with the denial of benefits

7

due under his health plans and for the recovery of the benefits due under his plans. He filed a third amended complaint to allege that Prudential's fraudulent misrepresentation of its NASD membership status had caused him to improperly agree to arbitrate his claims in Riccard I, and also to allege "further [a]ge discrimination, [d]isability discrimination, and [r]etaliation" by Prudential against Riccard for filing the two earlier lawsuits against it.

After Riccard filed that third amended complaint, Prudential moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss, among others, the fraudulent misrepresentation count. The district court granted the motion, determining as a matter of law that Riccard could not establish that he had detrimentally relied on any misrepresentation by Prudential of its NASD membership status.

When the district court dismissed the fraudulent misrepresentation count, it also dismissed the "further retaliation and discrimination" count without prejudice and directed Riccard to file a fourth amended complaint in "greater detail, clearly asserting the acts that qualify as statutorily protected activity and adverse employment actions, as well as the dates on which these acts (and any acts related to them) occurred." Riccard did file a fourth amended complaint which dropped the "further discrimination" claim and re-pleaded the retaliation claim in greater

8

detail. Shortly thereafter, the district court stayed discovery in the case. Riccard filed a motion to reconsider the discovery stay, which the court denied. The district court granted a motion for judgment on the pleadings filed by Prudential pursuant to Rule 12(c), and it dismissed the restyled "further retaliation" claim in the fourth amended complaint.

Riccard timely appealed the judgment the district court entered against him in his third lawsuit.

### D. The Imposition of Sanctions

In April 2000, while the proceedings in Riccard II and Riccard III were pending, Riccard, via his attorney Rasch, filed a Rule 11 motion for sanctions against Prudential. The motion, which was actually filed in the Riccard II case, alleged that Prudential had misrepresented its NASD membership status not only to the district court in Riccard II when it moved to compel arbitration, but to other federal courts as well, including the United States Court of Appeals for the Third Circuit in litigation involving other plaintifffs.

The district court denied the motion for sanctions, finding that it was "baseless" and filed in bad faith because Prudential had "not attempt[ed] to mislead th[e] Court [with regard to] its NASD status." The court explained that it had been well aware that Prudential had sought to compel arbitration on the basis of the

9

NASD membership of its subsidiary, Pruco, and not its own membership, and the court had expressly determined in its April 9, 1998 order that Pruco's undisputed membership was sufficient to compel arbitration. The district court also determined that Riccard and Rasch knew the motion for sanctions was baseless when they filed it, because they had received a copy of Prudential's February 1998 memo to the district court stating that Prudential had resigned its NASD membership in 1996.

Prudential then filed a motion requesting that it be awarded the attorney's fees it had incurred in opposing the motion for sanctions. After conducting a sanctions hearing, at which Riccard and Rasch were given the opportunity to suggest possible sanctions, the district court determined that monetary sanctions against Riccard would not suffice to prevent him from filing further baseless motions and entered an injunction prohibiting Riccard or an individual or entity acting on his behalf from filing any new actions against Prudential without first obtaining leave of court. Determining that monetary sanctions would be an appropriate and sufficient deterrent to Rasch, however, the court ordered him to pay $10,000 for filing the baseless Rule 11 motion. Riccard and Rasch have appealed the order imposing sanctions against them and imposing as sanctions the injunction and monetary levy.

## E.  The Finding of Civil Contempt

## And Modification of the Injunction

Approximately four months after the injunction was entered prohibiting Riccard from filing any new "actions" against Prudential without leave of the court, Riccard, acting through attorney Rasch, filed what he styled "Complaints" against Prudential with the NASD, the Securities and Exchange Commission, the Commissioner of the New Jersey Department of Banking and Insurance, the United States Attorney's Office for the Middle District of Florida, and the Florida Department of Agriculture, with copies to various newspapers.  Those complaints included  packages containing copies of court orders, transcript excerpts, letters, pleadings, and affidavits, for a total of two-hundred pages of exhibits, and they complained about Prudential's alleged criminal activity, including what Riccard said was Prudential's fraud in misrepresenting its NASD membership status to courts and the resulting obstruction of justice.  Riccard and Rasch also filed "ethical grievances" with the Florida and  New York State Bar Associations against attorneys representing Prudential.

In response to these filings, which were made without leave of court, Prudential filed a motion to hold Riccard in contempt for violating the injunction

the district court had entered against him. After conducting a show cause hearing, the district court held Riccard in civil contempt for filing the complaints and grievances against Prudential and its attorneys, and it ordered him to withdraw the offending complaints (with the exception of the ones sent to the newspapers) by sending the organizations withdrawal letters. The court also found that Prudential was entitled to an award of attorney's fees in connection with the contempt proceedings and awarded it $33,357.00, entering judgment against Riccard for that amount.

Shortly after the district court granted Prudential's contempt motion and in response to an invitation by the court, Prudential filed a motion to modify the injunction to include a prohibition against Riccard filing claims in any kind of forum against not only Prudential, but any of Prudential's past, present, or future attorneys or agents. The court modified the injunction to broaden it in that way.

Riccard has appealed all of the district court's orders in connection with the proceedings relating to the civil contempt motion, the injunction, and the related judgment.

## F. Riccard IV

Riccard's fourth lawsuit against Prudential was filed a week after the arbitration panel in his second lawsuit dismissed his age discrimination claim, and it simply re-alleged the same age discrimination claim. This Court has already affirmed the district court's dismissal of that lawsuit on the grounds that the filing of the suit was determined to be an abuse of process. See William Riccard v. Prudential Ins. Co. of Am., No. 00-14158 (11th Cir. March 13, 2001).

## II. DISCUSSION

In these appeals, Riccard appeals nine different orders of the district court: (1) the order in Riccard II compelling arbitration; (2) the order in Riccard II confirming the NASD arbitration decision; (3) the order in Riccard III dismissing the fraudulent misrepresentation claim; (4) the order in Riccard III granting Prudential's motion for judgment on the pleadings as to the "further retaliation" claim; (5) the order in Riccard II imposing sanctions against Riccard and Rasch for filing the motion for sanctions in bad faith; (6) the order in Riccard II imposing as sanctions an injunction against Riccard and a monetary fine for Rasch; (7) the order in Riccard II granting Prudential's motion for civil contempt against Riccard; (8) the order in Riccard II granting Prudential as costs its attorney's fees associated with the contempt proceedings; and (9) the order in Riccard II

13

modifying the injunction imposed on Riccard.   Rasch is a co-appellant with Riccard as to orders we have numbered 5 and 6.

For the reasons that follow, we affirm all of the challenged orders  and the resulting judgments,  except that we reverse order number 4, and we vacate and remand as to order number 8 and part of order number 7.

## A. The Decision in <u>Riccard II</u> to Compel NASD Arbitration

## (Order 1)

In 1982, as a condition of his continued employment with Prudential, Riccard executed a "Form U-4,"  which is an application to the NASD  for registration as a general securities representative.  In the U-4 form Riccard signed, he  agreed, among other things, to arbitrate any dispute or claim arising between him and his firm or any other person that is required to be arbitrated under the rules, constitutions, or bylaws of the NASD.  Rules 10101 and 10201 of the NASD's Code of Arbitration Procedure make employment disputes between a member firm and an "associated person,"  such as Riccard, subject to arbitration by the NASD at the behest of an NASD member.  <u>See</u> National Association of Securities Dealers, Code of Arbitration Procedure (1973).

On the U-4 form, Riccard identified "Pruco Corporation" ("Pruco") as his "firm." Pruco is a wholly-owned, broker-dealer subsidiary of Prudential and is a registered member of the NASD. The U-4 is a contract between the registrant (Riccard) and the NASD, not between the registrant and his firm. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n.2, 111 S. Ct. 1647, 1651 n.2 (1991). At the time Riccard signed the U-4 form Prudential, as well as Pruco, was a registered member of the NASD. And at all relevant times, the parties considered Riccard to be an employee of Prudential, not Pruco.[3]

If Prudential had still been an NASD member at the time it filed the motion to compel arbitration, we would not have this issue to resolve, because both sides agree that the NASD Code, which Riccard agreed to be bound by when he signed the U-4 form, covers employment disputes such as this one and provides for mandatory arbitration at the instance of a member.[4] The question arises because

---

[3]In 1993, Prudential notified the NASD that it had "electronically transferred its registered agents [including Riccard] to Pruco . . . by administrative termination by mass transaction." The effect of this transfer is not entirely clear, but the parties implicitly agree that at all times material to this action, Riccard was considered to be an employee of Prudential and assume in their briefs that he should be considered as such for purposes of this litigation.

[4] Or it did at the time. After the operative events in this case, the NASD amended this rule to specifically eliminate mandatory arbitration of statutory employment discrimination claims for claims filed on or after January 1, 1999. See National Association of Securities Dealers, Code of Arbitration Procedure, Rule

although Prudential was an NASD member at the time the events which gave rise to the dispute occurred in 1995 and at the time Riccard filed the EEOC complaint concerning those events in April 1996, its membership in NASD ended in May 1996, which was before the EEOC issued a right to sue letter in September 1997 and before Riccard filed his lawsuit in November 1997 which resulted in Prudential's motion to compel arbitration.

The relevant part of the NASD Code, which sets forth the claims that are required to be arbitrated, provides as follows:

[a] dispute, claim or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such  member, shall be arbitrated under this Code, at the instance of:  (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and

10201(b) (1973) (amend. effective Jan. 1, 1999).

16

(3) a person associated with a member against a person associated

with a member."

National Association of Securities Dealers, Code of Arbitration Procedure, Rule

10201(a) (1973) (emphases added).

Under this rule, an employment dispute, claim, or controversy between a

member and an associated person is subject to mandatory arbitration at the instance

of a member. Riccard's dispute with Prudential (it was not with Pruco) was

subject to mandatory arbitration at the instance of Prudential if Riccard is

considered an "associated person" (as provided in the NASD by-laws)[5] at the

relevant time and if Prudential is considered a "member" of NASD at the relevant

time.[6] The disagreement between the parties is over what constitutes the relevant

---

[5] The bylaws in force when Riccard signed the U-4 agreement and prior to his suing Prudential provided that an "associated person" is "any natural person engaged in the investment banking or securities business who is directly or indirectly . . . controlled by such member." National Association of Securities Dealers, Inc., NASD By-Laws, Art. I (dd)(2).

[6] The parties do not address the issue of Riccard's status as an associated person, but we must address it concomitantly with the issue of membership status in order to establish that Riccard's dispute with Prudential was subject to mandatory arbitration under the rule ("[a]ny dispute, claim or controversy . . . between or among members and/or associated persons . . .") and to ensure

17

time for ascertaining whether Prudential was an NASD member for Rule 10201(a) purposes.  Riccard  assumes that NASD membership for Rule 10201(a)  purposes must be judged at the time of the motion to compel or at least at the time of the filing of the lawsuit which resulted in the motion.   Prudential, on the other hand, argues that  status as an NASD member should be judged at the time of the events leading to the dispute or claim or when the dispute or claim arose.

The language of  Rule 10201(a) is somewhat ambiguous on this point.  On the one hand, it speaks of arbitration "at the instance" of a member or person associated with a member, which seems to suggest that the party insisting upon arbitration would have to be a member or associated with a member at the time it did the insisting.  On the other hand, the language speaks of the disputes, claims, and controversies that are subject to mandatory arbitration as being those "arising" in connection with the business of a member or "arising" out of the employment or termination of employment of  persons associated with a member, and that sounds as though the focus is on membership at the time of the "arising" of the dispute, claim, or controversy.

---

conformity in the determination of  the relevant time period for determining membership status and associated person status, as both members and associated persons are empowered by the rule to insist on arbitration.

18

We think the key is that the rule explicitly includes among the claims, disputes, and controversies subject to mandatory arbitration those between a member and associated person "arising out of the . . . termination of employment of such associated person(s) with such member." That indicates to us that the status of association with a member must be determined at the time of the events giving rise to the dispute or claim. If not, a termination of employment could never be arbitrated, because from the time the termination occurred the employee (no longer controlled by his employer) would no longer be a person associated with a member.[7] This would defeat the rule's clear intent that termination of employment claims be subject to mandatory arbitration after an employee is terminated. Of course, the question here is when Prudential's membership status is to be judged, but we do not see why the NASD rule would make associated person status count to enable insistence on arbitration if that status existed at time of the events (such as a termination of employment) giving rise to the dispute or claim, but not make membership count if membership existed at that same time.

---

[7] It follows that the question of whether Riccard is an associated person so that the dispute between him and Prudential is subject to mandatory arbitration turns on his status as an "associated person" at the time of the events giving rise to the dispute or claim. Because Riccard was a natural person engaged in the securities business who was controlled by member Prudential at the time of the 1995 events giving rise to the dispute, he was an "associated person" as relevant to this discussion.

Accordingly, Prudential's membership status should be judged at the time of the events giving rise to the dispute or claim.

Because Prudential was a member in the NASD at the time of the 1995 events giving rise to the dispute, claim, or controversy, Prudential was entitled to insist upon mandatory arbitration even though it was not an NASD member at the time the lawsuit was filed in 1997. The district court did not err in granting Prudential's motion to compel arbitration.[8]

**B. The Decision in <u>Riccard II</u> to Confirm the NASD Arbitration Award**

**(Order 2)**

After hearing testimony from twenty-two witnesses in fifty evidentiary sessions over the course of thirteen months, an NASD arbitration panel dismissed all of Riccard's claims with prejudice. Prudential filed a motion with the district court to confirm the arbitration decision, and Riccard filed a motion to vacate it. The district court granted Prudential's motion to confirm and denied Riccard's

---

[8]Because we decide the issue on this basis, we need not pass on the validity of the district court's reasoning that Prudential was entitled to insist on arbitration as a third party beneficiary of the agreement between the NASD and Riccard naming Prudential's subsidiary Pruco as Riccard's "firm."

motion to vacate. Riccard contends that in doing so the court failed to properly consider evidence that required vacation of the decision.

The Federal Arbitration Act ("FAA"), 9 U.S. C. § 1, et. seq., imposes a heavy presumption in favor of confirming arbitration awards. Gianelli Money Purchase Plan and Trust v. ADM Investor Serv., Inc., 146 F.3d 1309, 1312 (11ᵗʰ Cir. 1998). As a result, a court's confirmation of an arbitration award is usually routine or summary. Cullen v. Paine, Webber, Jackson, & Curtis, Inc., 863 F.2d 851, 854 (11ᵗʰ Cir. 1989). Awards, however, may be vacated on four statutory grounds, set forth in the FAA, where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing when there was good cause to postpone, or in refusing to hear pertinent and material evidence, or were guilty of any other misbehavior which may have prejudiced any party; or (4) the arbitrators exceeded their powers so much so that a mutual, final, and definite award upon the subject matter submitted was not made.[9]

_____

[9] In addition, if no rationale was given by the arbitration panel for the award and the reviewing court can determine no rational basis for it, the award may be vacated on two non-statutory bases: (1) the award is arbitrary and capricious; or (2) enforcement of the award is contrary to public policy. See Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 778-79 (11ᵗʰ Cir. 1993).

Though Riccard argues otherwise, we think the evidence in this case was

21

See 9 U.S.C. § 10(a). The burden is on the party requesting vacatur of the award to prove one of these four bases. See id. In reviewing the district court's confirmation of the panel's decision in favor of Prudential, we review questions of law de novo and findings of fact only for clear error. Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221 (11th Cir. 2000).

In its order confirming the arbitration award, the district court noted that it had conducted an extensive review of the hundreds of pages of motions, memos, and exhibits filed on the issue of the panel's behavior during arbitration and determined that Riccard had a "full and fair opportunity" to present his case. More specifically, the court determined that the panel's failure to grant Riccard a continuance after he fired his attorney mid-hearing (forcing him to proceed pro se for three days) was not indicative of the panel's partiality or of their misconduct for failure to postpone the hearing for sufficient cause shown, because the court determined from the record that Riccard intentionally fired his attorney to gain a continuance he had been denied earlier.

Further, the district court determined that an answering machine message left by the chair of the arbitration panel on the hotel machine of a Prudential

_____

enough to provide a "rational basis" for the award, and neither of the non-statutory grounds exists in this case.

22

attorney immediately after she resigned from the panel (apparently in protest over the fact that the panel would not grant Riccard a continuance to obtain new counsel) did not demonstrate "evident partiality" on the part of any of the panel members who actually decided the case.[10]  Finally, the court determined that Riccard was the beneficiary of any inconsistent behavior by the panel in applying discovery rules and other internal procedures, because the panel "bent over backwards to accommodate" his and his attorney's "repeated failures to meet discovery deadlines."

We see no reason to disturb the district court's ruling on this matter, because its findings of fact are not clearly erroneous, nor are any of its legal conclusions wrong.  We affirm the order granting the motion to confirm and denying the motion to vacate the arbitration award.

_____

[10] The message stated, "Let me tell you, these are the reasons why you should keep Bennett [a panel member later replaced] and why you should keep Wright [another panel member].  Both of them and me want to dismiss this case with prejudice.  We want to dismiss the age discrimination and retaliation, and the disability, dismiss it, all of those three claims."  Only Wright was on the panel that eventually decided Riccard's case.

Prudential's attorney immediately retained a court reporter and had the message
transcribed after receiving it.  He then disclosed it to the NASD and Riccard.  It is unclear  why a panel member that was as favorably biased toward Prudential as her message indicated would resign in protest in the case over how Riccard was treated or the violation of internal operating procedures.

## C. The Dismissal of the Fraudulent Misrepresentation Count in <u>Riccard III</u>

## (Order 3)

Riccard's third lawsuit against Prudential included a claim that in connection with his first lawsuit against it Prudential had fraudulently misrepresented to him its NASD membership status, causing him to agree to arbitrate his claims in that first lawsuit, which he would not have done had he known the truth. The district court dismissed the claim after determining as a matter of law that Riccard could not establish that he detrimentally relied on Prudential's misrepresentation to him. Riccard argues that he can.

In view of our earlier decision that Riccard's claims were subject to mandatory arbitration notwithstanding the fact that Prudential dropped its membership in the NASD after the events giving rise to the dispute between it and Riccard occurred, it necessarily follows that Riccard cannot prove detrimental reliance on any misrepresentation that Prudential made to him about its membership status. Riccard suffered no detriment by voluntarily agreeing to

arbitrate, because his claims were due to be sent to arbitration even if he had opposed it.[11]

## D. The Grant of Judgment on the Pleadings in <u>Riccard III</u>

## (Order 4)

In <u>Riccard III</u>, when the district court dismissed with prejudice the fraudulent misrepresentation count in the third amended complaint in response to Prudential's motion to dismiss, it also dismissed without prejudice a count alleging "further retaliation and discrimination," and in doing so, the court directed Riccard to re-plead with "greater detail, clearly asserting the acts that qualify as statutorily

---

[11] Riccard argues, alternatively, that even if this Court upholds the order compelling arbitration, we should reverse the district court's dismissal of the fraudulent misrepresentation count on grounds of an inability to establish the requisite element of detrimental reliance under any set of facts, because the court mistakenly assumed the only injury Riccard alleged in his complaint was his being forced to arbitrate his claims in <u>Riccard I</u>. Actually, he says, his allegations also include suffering "severe emotional trauma as a consequence" of the misrepresentations. However, emotional trauma generally cannot constitute injury in a fraud claim under Florida law. <u>See</u> <u>Food Fair, Inc. v. Anderson</u>, 382 So.2d 150, 153-54 (5th DCA Fla. 1980). Put another way, the law does not protect the sensibilities of those fragile enough to suffer severe emotional trauma from being told lies that do not actually operate to their detriment.

25

protected activity and adverse employment actions, as well as the dates on which these acts (and any acts related to them) occurred."[12]

Attempting to satisfy the court, Riccard filed a fourth amended complaint, re-pleading the retaliation claim in greater detail. Specifically, he restyled the count "further retaliation" and rewrote it to allege that Prudential and its representatives had retaliated against him by: (1) refusing to reinstate him to the same or equivalent position to the one he held before being injured, and "specifically indicat[ing] in 1997, 1998, and 1999 that they were not going to [do

---

[12] Riccard contends that the district court improperly directed him to file a fourth amended complaint with greater specificity, which he says held him to a heightened pleading standard, and erred in dismissing the retaliation claim in the third amended complaint for insufficient specificity. We do not consider this contention, however, because Riccard did not appeal the dismissal of the retaliation count which was count III of the third amended complaint. In his notice of appeal, Riccard stated that he "hereby appeals . . . from the Order dismissing Count IV of the Third Amended Complaint dated March 16 2001 . . . ." By specifically naming count IV (which contained the fraudulent misrepresentation claim) but none of the other counts in his notice of appeal, Riccard indicated his intent to appeal only the dismissal of that particular count of the third complaint. See Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989) ("[I]n some instances '[w]here the appellant notices the appeal of a specified judgment only or a part thereof, . . . [an appellate] court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.'. . . When an order disposes of two separate motions on two separate issues and the 'express me ntion in the notice of appeal of one part of the order negate[s] any inference of intent to appeal from the order as a whole,' the appellate court has no jurisdiction." (quoting C.A. May Marine Supply Co. v. Brunswick Corp., 649 F.2d 1049, 1056 (5th Cir. July 1981))).

26

so] because he had filed the discrimination charges" with the EEOC and the Florida Commission on Human Rights in 1996; (2) cancelling his appointments for insurance licenses with Prudential in July 1997, thereby evidencing its intent to prevent Riccard from coming back to work because he had filed the 1996 discrimination charges; (3) making "specific statements in 1998 and 1999 coercing [him] to retire instead of returning to work," such as threatening him in 1999 while he was out on long-term disability with examinations by "doctor after doctor" unless he retired; and (4) refusing to allow the third party administrator for Prudential's worker's compensation coverage to settle a worker's compensation claim Riccard had against Prudential, and refusing to allow that administrator to pay for his medical care. Prudential then moved for a judgment on the pleadings, which the district court granted. The court determined that, accepting Riccard's allegations as true, he could not state a claim for retaliation because the first two retaliatory acts he alleged were outside the statute of limitations, and the third and fourth acts he alleged did not amount to adverse employment actions, an essential element of his prima facie case.

Riccard argues that the district court erred in granting judgment on the pleadings against him. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter

of law."  Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001).

Taking each of the retaliatory acts alleged in the complaint in turn, we look first  to the allegations of  a "failure to reinstate" presented by the first three retaliatory acts.   Under both the ADEA and the ADA, a Florida resident complaining of retaliation must file a charge with the appropriate agency not more than 300 days after the alleged unlawful practice occurred.   Maynard v. Pneumatic Prods. Corp., 256 F.3d 1259, 1263 (11th Cir. 2001).   "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2072 (2002).   Discrete acts are acts such as refusal to hire or failure to promote, and "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Id. at 2073; see also EEOC  v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271-72 (11th Cir. 2002) (failure to hire acts were discrete events and did not constitute a continuing violation that extended the limitations period).

According to the complaint,  Prudential's retaliatory failure to reinstate Riccard first occurred in 1997 and reoccurred again in 1998 and 1999.  Because the failure to reinstate is a discrete retaliatory act akin to a refusal to hire or promote and Riccard did not file his EEOC charge that serves as the basis for the

retaliation count until October 19, 1999, the district court correctly dismissed as outside the statute of limitations the 1997 and 1998 failure to reinstate claims presented in Riccard's first allegation, as well as the 1997 "cancelled license claim" presented in his second allegation. The 1999 failure to reinstate claim presented in the first allegation, however, and the "coercive threats" claim, at least those threats made in 1999, presented in the third allegation would not be barred as a matter of law on statute of limitations grounds, and the court should have allowed the retaliation claim to proceed to discovery insofar as those allegations were concerned.[13]

---

[13] The district court did present an alternative reason for dismissing the "coercive threats" claim presented in the third allegation, stating that a threat not carried out cannot, as a matter of law, constitute an adverse employment action. The court relied on our holding in <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571 (11th Cir. 2000), where we noted that a supervisor's threatened disciplinary letter which was never written could not constitute an adverse employment action. <u>Id.</u> at 588 n.15. In dismissing the "coercive threats" claim as a basis for the retaliation claim, however, the district court noted that it was considering only the "threat" recounted with "specificity" by Riccard – that in January 1999 Kevin Carney threatened to "require Riccard to be examined by doctor after doctor unless he agreed to retire" – instead of the broader allegation that Prudential representatives "made specific statements in 1998 and 1999 coercing Riccard to retire instead of returning to work."

In disregarding the broader allegation, the district court incorrectly held Riccard to a heightened pleading standard. See <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957) (short and plain statement of the claim required by Fed. R. Civ. P. 8(a) need only give the defendant fair notice of what the plaintiff's claim is and the

29

We now turn to the fourth retaliatory act  Riccard alleged as a basis for his

retaliation claim– Prudential's refusal, as long as Riccard's discrimination

litigation was ongoing, to allow the third party administrator for its  worker's

compensation coverage to settle a worker's compensation claim Riccard  had

against it or to agree to pay for his medical care.   The district court again relied on

our decision in Gupta v. Florida Board of Regents to determine that this alleged act

could  not serve as the basis for a retaliation claim.  212 F.3d 571 (11th Cir. 2000).

We held in Gupta that the failure to settle the plaintiff employee's  discrimination

claim itself cannot constitute an adverse employment action because it does  not

alter the employee's "compensation, terms, conditions, or privileges of

employment. . . ."  Id. at 589.  The situation here is distinguishable  because

Riccard alleged that Prudential retaliated for his filing of the discrimination claim

by refusing, in bad faith, to settle a different claim, one for worker's compensation.

 Riccard's claim that Prudential allegedly refused, in bad faith, to settle was

---

grounds for the claim).   This error  changes the Gupta analysis with regard to this
claim.  In Gupta, the "threat" at issue was a lone threat, was not carried out, and
caused  no harm.   Because multiple and continuing threats that allegedly were
carried out and directly resulted in harm to Riccard could conceivably rise to the
level of an adverse employment action, the district court erred in determining that
the "coercive threats" claim could  not, as a matter of law, serve as a basis for the
retaliation claim.  See generally Geer v. Marco Warehousing, Inc., 179 F. Supp. 2d
1332, 1344 (M.D. Ala. 2001) ("Conceivably certain threats could be perceived as
such an impediment to opposition that they could be regarded as retaliation.").

independent from his discrimination and retaliation claim. Construing the complaint in the light most favorable to Riccard, as we must, Prudential's claimed refusal to allow Riccard's allegedly valid worker's compensation claim to settle or to let him receive medical benefits to which he allegedly was lawfully entitled in retaliation for the discrimination lawsuit he filed against it potentially alters privileges of employment and thus could constitute an adverse employment action. Thus, the district court erred in determining that the bad faith hindrance of the settlement of a worker's compensation claim or payment of medical benefits could not as a matter of law constitute an adverse employment action and serve as the basis of a retaliation claim.

We reverse the judgment on the pleadings in Riccard III to the extent that it determined that the 1999 failure to reinstate claim, the 1999 "coercive threats" claim, and the failure to settle the worker's compensation claim could not serve as the basis for, and were not enough to state, a retaliation claim, and we remand for proceedings consistent with this opinion.

### E. The Rule 11 Sanctions Issues in  Riccard  II

### (Orders  5 & 6 )

31

In Riccard II, attorney Rasch filed on behalf of his client Riccard a motion for Rule 11 motion sanctions against Prudential, alleging that it had misrepresented its NASD membership status to the district court in Riccard I, to the United States Court of Appeals for the Third Circuit in connection with a case brought by former Prudential sales agents alleging retaliation, to the NASD arbitration panel that heard Riccard II, and to the district court when it moved to compel arbitration in Riccard II.  Specifically, the motion alleged that Prudential made misrepresentations to the district court by:  (1) citing to the Third Circuit decision in In re Prudential Ins. Co. of Am. Litigation, 133 F.3d 225 (3rd Cir. 1998),  as support for its arguments in favor of compelling arbitration in Riccard's case, without explaining to the court that the reference in In re Prudential Ins. Co. of Am. Litigation to Prudential's NASD membership was the result of Prudential's admitted failure to correct that court's misunderstanding of Prudential's membership status until after the decision issued; and (2) stating in a February 10, 1998 memo to the court filed in connection with its motion to compel arbitration that it was in the process of "re-registering" with the NASD when it did not file a new application for membership until March 1998.

The district court denied the sanctions motion and, after notice and a hearing, imposed sanctions on Riccard and Rasch for filing it. The court determined the sanctions motion was baseless and filed in bad faith because Riccard and Rasch lacked a reasonable factual basis for the motion. That was true, the court explained, because: (1) Prudential had provided them, prior to the time they filed the Rule 11 motion, with a copy of the February 10, 1998 memo it submitted to the court stating that it had resigned its NASD membership in 1996 but was in the process of re-registering; and (2) they knew that the district court had earlier, in April 1998, compelled arbitration in Riccard II on the basis of Pruco's NASD membership, making any argument about Prudential's own membership irrelevant to the basis of the court's order. As a sanction for filing the Rule 11 motion, Riccard was enjoined from filing any new actions against Prudential without first obtaining leave of court, and Rasch was ordered to pay Prudential $10,000.

Riccard and Rasch challenge both the district court's decision to impose sanctions against them for filing that motion as well as the nature and extent of the sanctions imposed. We review a district court's Rule 11 determinations only for an abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990).

33

Rule 11 requires district courts to impose "appropriate sanctions," after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose. See Fed. R. Civ. P. 11(b). The objective standard for assessing conduct under Rule 11 is "reasonableness under the circumstances" and "what [it] was reasonable to believe at the time" the pleading was submitted. Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998). Sanctions are warranted when a party exhibits a "deliberate indifference to obvious facts," but not when the party's evidence to support a claim is "merely weak." Id.

The district court did not abuse its discretion in imposing sanctions against them for filing the motion for sanctions. Their motion was part of a pattern of re-argument and re-litigation that has marked their efforts in this lawsuit, and that is not a proper use of Rule 11. See Advisory Committee Notes, 1993 Amendments ("Rule 11 motions [should not] be prepared [in order to] emphasize the merit's of a party's position. . . ."); see also Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (imposition of sanctions was supported by evidence that litigant brought action based on allegations which had been adversely decided against him previously).

And their Rule 11 motion was baseless.  When the district court ruled on Prudential's motion to compel arbitration the court had known, and they knew the court had known, that Prudential was not an NASD member.  They also knew that the court's ruling on the motion to compel arbitration was based entirely upon a third party beneficiary theory that did not depend at all on whether Prudential was an NASD member.  Despite all of this, they filed the Rule 11 motion anyway, requiring the district court and Prudential to spend time and effort dealing with it.  They should have been sanctioned for their bad faith motion, as they were.[14]

---

[14] Riccard and Rasch also contend that their due process rights were violated because the district court did not give them sufficient notice and an opportunity to be heard on whether sanctions should be imposed.  After examining the record, we reject that contention.  Due process in this context requires only that the sanctionee have fair notice of the possible imposition of sanctions and an opportunity to respond orally or in writing.  Donaldson v. Clark, 819 F.2d 1551, 1559-60 (11th Cir. 1987) (noting also that a hearing separate from trial or other pretrial hearings is not required by due process).  The adequacy of notice and hearing depends, to some extent, on the knowledge the party has of the consequences of his own conduct.  Link v. Wabash Railroad Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 1389-90 (1962).  Rule 11 itself "constitutes a form of notice" that sanctions can be imposed for a baseless motion because the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed; thus, an "attorney could not assert that he had no notice or knowledge of the standards of conduct that the rule itself provides."  Donaldson, 819 F.2d at 1560.  Further, though the district court did state in its order denying Riccard's motion for sanctions against Prudential that it thought an award of attorney's fees incurred in opposing the sanctions motion was appropriate, it gave Riccard eleven days to respond to Prudential's motion for such fees.  Later, the court also gave him notice and a hearing prior to the imposition of the particular sanctions of the injunction and monetary levy.  The notice and opportunity to be heard they were given

35

Riccard and Rasch also contend that even if the imposition of sanctions against them was not an abuse of the district court's discretion, the nature and extent of the sanctions imposed were. A sanction imposed for a violation of Rule 11 must be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Although the sanctions most commonly imposed are costs and attorney's fees, the selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion. See Donaldson v. Clark, 819 F.2d 1551, 1557 (11th Cir. 1987). When imposing sanctions, the district court must describe the conduct determined to constitute a violation of the rule and explain the basis for the sanction imposed. See Fed. R. Civ. P. 11(c)(3).

The district court found that a monetary sanction was insufficient to deter Riccard from future baseless, bad-faith filings and therefore would be insufficient to protect the court's ability to carry out its judicial functions, because: (1) Riccard was not financially well off and could not afford to pay a sanction; and (2) even if he could afford to pay, Riccard would gladly do so in order to "continue his vendetta" against Prudential. The district court reasoned that "given Riccard's near-obsession regarding his former employer, injunctive relief is the only means

satisfies due process.

36

that offers any chance of preventing further harassment of Prudential, further clogging of the judicial machinery with meritless pleadings, and further overloading of already overloaded court dockets." We cannot fault that reasoning.

Nor can we fault the scope of the injunction, except perhaps for being too narrow – but more about that problem later. The injunction prohibited Riccard from filing any new "action, complaint, or claim for relief" against "Prudential, its affiliates, or subsidiaries [in] federal court, state court, or any other forum" unless he first obtained leave to file from the district court first. The court stated that leave would be freely given if the new action did not involve Riccard's former employment with Prudential. There was no abuse of discretion in the sanction the district court imposed against Riccard. Three or four lawsuits over one employment relationship is enough.[15]

_____

[15] The court relied on the All Writs Act, 28 U.S.C. § 1651, for its authority to include within the scope of the injunction state court and "any other forum" filings. The Act provides: "The Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts, which this one does not. See, e.g., Del Pino v. AT&T Information Systems, Inc., 921 F.Supp. 761, 765 (S.D. Fla. 1996); Martin-Trigona v. Lavien, 592 F.Supp. 1566, 1573 (D. Conn. 1984), aff'd, 763 F.2d 140 (2nd Cir. 1985); Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993); Procup v.

In contrast to its finding with regard to Riccard, the court found that a monetary sanction would be sufficient to deter Rasch from future baseless, bad-faith filings, and it ordered him to pay Prudential $10,000.  We do  not think the district court abused its discretion in deciding that a monetary levy  was an appropriate  sanction to dissuade Rasch from further baseless filings, nor is the amount levied out of line with the damage done or the need to deter further damage of the same sort.  Ten thousand dollars represents only about one-third of the amount of  attorney's fees Prudential  incurred in defending the Rule 11 motion Rasch and Riccard filed against it.

## F. The Contempt Finding and Award of Attorney's Fees
## (Orders 7 & 8)

Approximately four months after the district court enjoined Riccard  from filing any new "action, complaint, or claim for relief" against "Prudential, its affiliates, or subsidiaries [in] federal court, state court, or any other forum" unless he first obtained leave from the district court,  Riccard, without obtaining leave of court, filed a host of what he styled  "Complaints" against Prudential.  Those complaints, signed by Riccard with his "thanks for listening,"  consisted of  court

Strickland, 792 F.2d 1069, 1079 (11th Cir. 1986).

orders, transcript excerpts, letters, pleadings, and affidavits, for a total of two-hundred pages of exhibits, and they complained about Prudential's alleged criminal activity, reiterating Riccard's accusations about Prudential fraudulently misrepresenting its NASD membership status to courts and charging Prudential with obstruction of justice.  Riccard  filed those complaints with the NASD, the Securities and  Exchange Commission, the Commissioner of the New Jersey Department of Banking and Insurance, the United States Attorney's Office for the Middle District of Florida, and the Florida Department of Agriculture, with copies to various newspapers.  And Riccard also filed ethical grievances against Prudential's attorneys with the New York State Bar Association  and the Florida Bar Association.

Understandably upset, Prudential filed a motion asking the district court to hold Riccard in contempt for violating its injunction.  After notice and a show cause hearing, the district court did hold Riccard in civil contempt for filing the complaints and grievances, finding clear and convincing evidence that Riccard had violated a clear, unambiguous, valid, and lawful order of the court – its previously issued injunction against further filings without leave of court.

An injunction can be enforced, if necessary, through a contempt proceeding. Doe v. Bush, 261 F.3d 1037, 1064 (11th Cir. 2001).  A finding of civil contempt  –

willful disregard of the authority of the court – must be supported by clear and convincing evidence. McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000). The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. Id. In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard. United States v. Greyhound Corp., 508 F.2d 529, 537 (7th Cir. 1974); see also Bush, 261 F.3d at 1063-64; Reynolds v. Roberts, 207 F.3d 1288, 1300-01 (11th Cir. 2000). We review a district court's determination of civil contempt only for an abuse of discretion. In re Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1545 (11th Cir. 1996).

Earlier in this opinion, we concluded that the district court's injunction against further filings without leave of court was valid. And Riccard does not contend that he lacked the ability to comply with it. Instead, his primary position is that all of his post-injunction filings did not violate any "clear and unambiguous terms" of the injunction. He says that the language prohibiting him from filing in "state court, federal court or any other forum" did not clearly prohibit him from

filing complaints against Prudential with administrative agencies and other executive branch departments of state and federal government. We disagree.

Context is often important to meaning, and so it is here. True, the injunction was issued in part to prevent Riccard's bitter campaign from further burdening the federal and state court system (state courts were apparently included based upon a prediction of where else Riccard might take his campaign). But as the district court pointed out in holding Riccard in contempt, the injunction was also issued in part to prevent further harassment of Prudential. That purpose supports interpreting the injunction to cover non-judicial filings. Moreover – and this is more important – the "any other forum" language has to refer to non-judicial fora, because all state and federal courts were already covered by the language which preceded that phrase. If we were to interpret "any other forum" to include only state and federal courts, then the language is meaningless because they are already covered by the words "in state court, federal court." The phrase "any other forum" has to mean something other than state and federal judicial fora, because that is what "other" means, and the meaning of the phrase "any other" is broad because the meaning of the word "any" is broad. See, e.g., CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1223 (11th Cir. 2001) (holding adjective "any" is not ambiguous; it has well-established meaning and means "all"); Coronado v. BankAtlantic Bancorp,

41

Inc., 222 F.3d 1315, 1321 (11th Cir. 2000) ("any" has an "expansive meaning, that is, one or some indiscriminately of whatever kind"). The critical language of the injunction is broad enough to clearly and unambiguously cover all fora to which complaints are made, including federal and state administrative and executive agencies and departments. We agree with the district court about that.

The ethical grievances Riccard filed with the bar associations of two states against attorneys representing Prudential are another matter. They raise a question involving not the "any other forum" language, but the language describing the forbidden targets of any further filings – "Prudential, its affiliates, or subsidiaries." The district court thought that Riccard's ethical complaints against Prudential's attorneys amounted to complaints against Prudential. Maybe. But "maybe" is not close enough when measured against the "clear and unambiguous" standard which we must apply. The injunction prohibited Riccard from filing, without leave of court, any new "action, complaint, or claim for relief" against "Prudential, its affiliates, or subsidiaries." The attorneys who have represented Prudential in its struggles with Riccard are not Prudential, nor are they its affiliates or subsidiaries. The injunction said nothing about Prudential's attorneys. For these reasons, we conclude that it did not clearly and unambiguously prohibit Riccard from filing with bar associations ethical complaints against those attorneys.

42

To summarize, we have concluded that one basis for the district court's decision that Riccard's post-injunction filings amounted to contempt of court is proper, but the other one is not. The proper basis (Riccard's filing of complaints against Prudential with state and federal administrative agencies and executive departments) being sufficient to support a finding of contempt, and having no doubt that the district court would have reached the same conclusion if it had disregarded entirely the improper basis (Riccard's filing of ethical complaints against Prudential's attorneys), we affirm the order holding him in contempt. The one exception to that affirmance is that we must vacate the district court's order insofar as it required him to send withdrawal letters to the bar associations.

Riccard also challenges the district court's decision to impose as a sanction against Riccard for his contempt of court an award to Prudential of $33,357.00, which represents the attorney's fees and costs it incurred in connection with the contempt proceedings. We cannot tell if the amount awarded would have been less if the district court had known that it could hold Riccard in contempt for only his post-injunction filings against Prudential and not for those against its attorneys. Accordingly, we will vacate the award of attorney's fees as a contempt sanction and instruct the district court to reconsider whether the amount of it should be

adjusted in light of our conclusion that Riccard's filings against Prudential's attorneys were not a violation of the injunction.

## G. The Modification of the Injunction

### (Order 9)

After holding Riccard in contempt, on Prudential's motion the district court modified the injunction to prohibit Riccard and anyone acting on his behalf from "filing any action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, charge or any similar instrument . . . against Prudential, its present, former or future agents, representatives, employees, directors, officers, attorneys, parents, assigns, predecessors or successors . . . , in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees . . .whether for pecuniary advantage or otherwise, without first obtaining leave of this Court....This lawsuit and the lawsuit captioned <u>Riccard v. The Prudential Insurance Co. of Am.</u>,

44

Case No. 6:99-CV-1266-ORL-31KRS, and any appeals from those suits, are the only Actions exempted from this Order."

A district court has broad discretion to modify an existing injunctive order when factual circumstances have changed or new ones have arisen since the order was issued, as long as notice and an opportunity to be heard are provided before the modification is made.   Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 380, 112 S.Ct. 748, 758 (1992); Doe v. Bush, 261 F.3d 1037, 1063-64 (11th Cir. 2001).  An injunction designed to protect against "abusive and vexatious litigation" cannot completely foreclose a litigant from any access to the courts. Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993).  We review a district court's modification of an injunction only  for an abuse of discretion.  Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 364 (11th Cir. 1997).

In explaining why the injunction needed to be expanded, the district court pointed out that since the injunction was originally issued,  Riccard had "expanded his sights to include  not only Prudential, but its attorneys," as evidenced by his filing of ethical grievances with the Florida and New York Bar Associations. There was also every reason to believe that Riccard might seek other innovative

ways to evade or circumvent the injunction, so the court attempted to foreclose as many of them as possible by broadening the injunction.

Riccard contends that the modified injunction is overbroad, violating his First Amendment rights. It is not. A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation. See Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987) (requiring vexatious litigants to obtain leave of court before filing any further complaints does not violate the First Amendment).

Riccard also contends that the injunction as modified violates separation of powers principles by interfering with the investigative authority of federal administrative agencies. It does not. While the executive branch has "discretionary power to control criminal prosecutions" and the courts should not interfere with the exercise of that power, in determining whether courts have done so we look to the extent judicial action has prevented the executive branch from performing its constitutionally assigned function. See In re Grand Jury Proceedings, 613 F.2d 501, 504-05 (5th Cir. 1980) (district court violated separation of powers principles by requiring Department of Justice to furnish to objects of grand jury investigation a statement of issues and facts pertinent to a decision to indict where no constitutional right to such a statement exists). The

modified injunction prohibiting Riccard from filings alleging criminal activity unless he first obtains leave of court does not impermissibly interfere with executive branch discretionary power. Riccard is not entirely prohibited from such filings, he is only subject to a judicial pre-screening requirement. Given his history of filing baseless, harassing actions against Prudential and its attorneys, that is a reasonable requirement.[16]

Riccard also contends that the breadth of the modified injunction is unwarranted, because he only filed four lawsuits against Prudential over several years and never actually sued any judges or lawyers. His point, we suppose, is that he should get credit for what little restraint he has shown so far, but as we have previously said, four lawsuits over one ended employment relationship is enough. And that is especially true since in those four lawsuits Riccard filed countless repetitive motions reflecting his obsession with the idea that Prudential had

---

[16]In addition, Riccard argues that the modification violates the Anti-Injunction Act, 28 U.S.C. § 2283, by barring new state court and administrative claims, and is not authorized by the All Writs Act, 28 U.S.C. § 1651, because it extends to state courts and administrative fora. Those arguments do not merit extended discussion. See Dombrowski v. Pfister, 380 U.S. 479, 484 n.2, 85 S. Ct. 1116, 1119 n.2 (1965) (Anti-injunction Act does not preclude injunctions against the institution of state court proceedings, but only bars stays of suits already instituted); Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 900 (8th Cir. 2000) ("every circuit to....address the question [of whether the Anti-Injunction Act applies to administrative proceedings] has held that it does not"); see also supra n.15 (discussing All Writs Act).

misrepresented its NASD status to him. He not only filed four lawsuits, but also lengthy complaints with state and federal administrative agencies and executive branch departments, again obsessing about Prudential's NASD status. Perhaps the lawyers against whom Riccard filed ethical grievances with their bar associations stemming from the same subject can take some comfort from the fact that Riccard has not yet sued them, but the district court was not required to wait until he did. The court did not abuse its discretion in modifying the injunction to broaden the scope of actions which Riccard could not take to carry out his vendetta against Prudential and those associated with it.

## III. CONCLUSION

We AFFIRM all the orders and the judgment entered by the district court in Riccard II (Nos. 11373 and 15209), except that we VACATE and REMAND for further proceedings consistent with this opinion the order and so much of the judgment as includes the order setting the amount of attorney's fees awarded in the contempt of court proceedings, and the part of the contempt order requiring Riccard to send letters of withdrawal to the bar associations.

We AFFIRM all of the orders and the judgment entered in Riccard III (No. 15219), except that we REVERSE the judgment on the pleadings as to the

retaliation claim contained in the fourth amended complaint to the extent it is

inconsistent with this opinion.