[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-16640

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2004
THOMAS K. KAHN
CLERK**

D.C. Docket No. 00-01334-MD-FAM


LEONARD J. KLAY, M.D.,
PRICE PLAINTIFFS,
Price, Sessa, Katz, & Yingling,
SANDRA JOHNSON,
PATRICIA FREYRE,
REGINA JOI PRICE, et al.,

Plaintiffs-Appellees,


versus


UNITED HEALTHGROUP, INC.,
UNITED HEALTHCARE,
PACIFICARE HEALTH SYSTEMS, INC.,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 30, 2004)**

Before TJOFLAT, BIRCH and GOODWIN[*], Circuit Judges.

TJOFLAT, Circuit Judge:

In this putative class action,[1] physicians are suing many of this country's largest HMOs, alleging that these organizations conspired to systematically underpay them for their medical services. The defendant HMOs immediately moved the district court to stay the proceedings and compel the named plaintiffs to arbitrate their claims. The court held that certain claims were arbitrable, and others nonarbitrable.[2] See In re Managed Care Litigation, 132 F. Supp. 2d 989 (S.D. Fla. 2000) [hereinafter, the 2000 Arbitration Order]. This order was slightly modified in In re Managed Care Litig., 143 F. Supp. 2d 1371 (S.D. Fla. 2001), and again in In re Managed Care Litig., MDL No. 1334, 2003 U.S. Dist. LEXIS 23035 (S.D. Fla. Sept. 15, 2003).[3] The details of these rulings and the winding

---

[*] Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] The district court certified a class in an order which is currently on appeal before this court, see Klay v. Humana, Inc., No. 02-16333. We presently express no opinion as to the district court's class certification decision, whether the plaintiffs have adequately stated any claims, or the merits of those claims

[2] An important point is that, as used both in this opinion and the district court's order, the term "nonarbitrable" simply refers to a claim that a plaintiff cannot be compelled to arbitrate. It does not necessarily mean that arbitration of such a claim is prohibited or illegal. As discussed in Part IV, a party may attempt to arbitrate a nonarbitrable claim, but if this is done without the other party's consent, the result is a legal nullity.

[3] The first modification was in response to an inconsistency in its original opinion that the defendants pointed out. The second modification was made due to the subsequent history of

procedural history leading up to them are not immediately relevant to this appeal. These arbitration orders, though important to this appeal, are not being challenged here.

Pursuant to the district court's original arbitration order, two of the defendants, United and PacifiCare, initiated arbitration. In response, the plaintiffs filed a motion with the district court purporting to dismiss the claims that the court had ruled arbitrable, and sought an injunction preventing the defendants from proceeding with arbitration of any claims. The plaintiffs contended that, since they voluntarily dismissed their arbitrable claims, the only claims remaining were those the court had ruled non-arbitrable, which the defendants had no right to bring before an arbitrator.

---

the arbitration order. Although we affirmed the district court's original arbitration order, see In re Humana, Inc. Managed Care Litig., 285 F.3d 971, 973 (11th Cir. 2002), reh'd en banc denied, 45 Fed. Appx. 880 (11th Cir. 2002), the Supreme Court reversed it in part, see PacifiCare Health Sys. v. Book, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003). The Court remanded the case to us, and we in turn remanded it to the district court for reconsideration in light of PacifiCare. See In re Humana Inc. Managed Care Litig., 333 F.3d 1247 (11th Cir. 2003). The district court issued a modified order in response, see In re Managed Care Litig., MDL No. 1334, 2003 U.S. Dist. LEXIS 23035 (S.D. Fla. Sept. 15, 2003). The substance of these arbitration orders is not currently before us on appeal. For purposes of this opinion, the only important fact about the arbitration orders is that they designated some claims as arbitrable, and others as non-arbitrable; the specific claims that were put into each category are not presently important.

We note that the defendants in this case seem to be uncertain about the specific order they are appealing. The Record Excerpts they prepared for this appeal are quite misleading, and claim that this appeal is being taken from still another district court order, In re Managed Care Litig., 236 F. Supp. 2d 1336 (S.D. Fla. 2002), which has nothing to do with the issues raised in their appeal.

3

The district court agreed that the defendants were trying to arbitrate two separate types of claims—those that had previously been ruled arbitrable by the court, and those that had been ruled nonarbitrable. Regarding the arbitrable claims, the district court ruled for the plaintiffs, concluding that since the plaintiffs had dismissed those claims, there was no longer a live case or controversy to resolve and so arbitration of those claims could be enjoined. The court likewise ruled in favor of the plaintiffs regarding the nonarbitrable claims, holding that an injunction against arbitration was necessary to protect its jurisdiction over those claims. See Order Granting Plaintiffs' Motion to Enjoin Arbitration (Nov. 6, 2002) [hereinafter, 2002 Injunction Order]. Both injunctions were issued pursuant to the court's authority under the All Writs Act, 28 U.S.C. § 1651(a).

Because it is pertinent to both sets of rulings, we begin in Part I by setting forth the standard of review, then proceed in Part II to discussing the general standards for issuing injunctions under the All Writs Act. In Part III we focus on the district court's resolution of the arbitrable claims, while Part IV discusses the nonarbitrable claims. Part V briefly concludes.

I.

In reviewing the district court's decision to grant an injunction, including an injunction under the All Writs Act, we apply an abuse-of-discretion standard. See

4

Winkler v. Eli Lilly & Co., 101 F.3d 1196, 1203 (7th Cir. 1996). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir. 2002). A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner. See Woodard v. Fanboy, L.L.C., 298 F.3d 1261, 1268 n.14 (11th Cir. 2002) (holding that, "in [the] preliminary injunction context, a district court abuses its discretion where the decision rests upon a 'misapplication of the law to the facts'" (quoting Marco v. Accent Publishing Co., 969 F.2d 1547, 1548 (3d Cir. 1992));[4] see, e.g., McMahon v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001) ("The abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse . . . ."). Finally, an abuse of discretion occurs if the district court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or does not result in any offsetting gain to anyone else or society at large. See, e.g., Keener v. Convergys Corp., 342 F.3d 1264, 1270-71

_____

[4] As discussed later, the distinction between preliminary and final injunctions is not material to this appeal, see infra, Part II.

5

(11th Cir. 2003) (holding that, because an injunction lacked "a reasonable scope" when the court made it apply nationwide rather than solely within the state of Georgia, it "should be modified to preclude [the appellee] from enforcing [a particular agreement] in Georgia only. . . . [T]he breadth of the injunction, without such limitation . . . constitutes an abuse of discretion . . . ."); Piazza v. Ebsco Indus., 273 F.3d 1341, 1352 (11th Cir. 2002) (holding that where the defendants "identified potential prejudice arising from certification of the [plaintiff's] claim under Rule 23(b)(3) . . . [and the plaintiff] has identified no basis for preferring certification of this claim under Rule 23(b)(3) to certification under Rule 23(b)(1), it was an abuse of discretion to certify the [plaintiff's] claim under Rule 23(b)(3).").

In making these assessments, we review the district court's factual determinations for clear error, see Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246 (11th Cir. 2002) (holding, in the preliminary injunction context, "[w]e review the district court's findings of fact under the clearly erroneous standard"), and its purely legal determinations de novo. See Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003) (holding that, when reviewing a district court's decision to grant or deny an injunction, "[u]nderlying questions of law . . . are reviewed de novo").

6

II.

There are at least three different types of injunctions a federal court may issue. The first is a "traditional" injunction, which may be issued as either an interim or permanent remedy for certain breaches of common law, statutory,[5] or constitutional rights. Granting such injunctions fall within the long-recognized, inherent equitable powers of the court. See ITT Comm. Devel. Corp. v. Barton, 569 F.2d 1351, 1359 (11th Cir. 1978) ("[A] federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitations) to process litigation to a just and equitable conclusion."). The requirements for a traditional injunction are well-known:

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).[6]

The factors cited above are the elements for receiving a preliminary injunction

---

[5] Of course, to obtain injunctive relief for violation of a statutory right, the statute in question must, at the very least, explicitly or implicitly create a cause of action. As this discussion demonstrates, a party may not obtain a "traditional" injunction if he lacks a cognizable, meritorious claim.

[6] The plaintiffs inexplicably refer to these as the "Rule 65 factors," despite the fact that Rule 65 does not mention them.

"The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." Id. at 1213 (Carnes, J., dissenting), citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 1404 n.12, 94 L. Ed. 2d 542 (1987). In addition, most courts do not consider the public interest element in deciding whether to issue a permanent injunction, though the Third Circuit has held otherwise, see Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

As the first factor makes clear, any motion or suit for a traditional injunction must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). See, e.g., Paisley v. Vitale, 807 F.2d 889, 892 (11th Cir. 1986) ("[T]he district court did not err in denying [the plaintiff's] motion for a preliminary injunction and dismissing the injunctive count of [the plaintiff's] complaint because [the plaintiff] has failed to state a claim for relief . . . .").

Considering the issue from another perspective, a traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise. Of course, even if his common law, statutory, or constitutional rights have been violated, the plaintiff must also meet the other requirements for obtaining an injunction to show that an injunction is the proper remedy for such violation.

The injunction in this case was not a traditional injunction, and could not be justified as such, because the plaintiffs had no cause of action against the defendants upon which the injunction was based. The injunction the plaintiffs sought prevented the defendants from arbitrating certain claims against them. "Wrongful arbitration," however, is not a cause of action for which a party may sue. Even regarding the claims the district court had ruled nonarbitrable, all that order meant was that the plaintiffs could not be compelled to arbitrate them. In initiating an arbitration anyway on those claims, the defendants simply did not violate any of the plaintiffs' legally cognizable rights, and certainly did not violate the court's 2000 Arbitration Order deeming those claims nonarbitrable. Consequently, the 2002 Injunction Order is not cognizable or defensible as a "traditional" injunction.

9

The second type of injunction a court may issue is a "statutory injunction," where a statute bans certain conduct or establishes certain rights, then specifies that a court may grant an injunction to enforce the statute. Because Congress has the power to determine the scope of statutory rights, the proper remedies for statutory violations, and the circumstances under which those remedies should be available, the standards for granting statutorily-authorized injunctions are necessarily controlled by the statute itself. See Barton, 569 F.2d at 1359 (noting that a federal court's equity powers are "subject . . . to congressional limitation"). For example, in SEC v. Blatt, 583 F.2d 1325, 1334 & n.29 (5th Cir. 1978)[7], we upheld the district court's decision to enjoin defendants from future violations of SEC Rule 10(b)-5, based on a variety of factors bearing little relationship to the traditional standards for an injunction, and notably omitting an "irreparable injury" requirement. See also Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 238 F.3d 1300, 1305 (11th Cir. 2001) (noting that, under the Railway Labor Act, "[a] failure by either side to maintain the status quo during the bargaining and mediation process may give rise to injunctive relief, even without the customary showing of irreparable injury").

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

Nevertheless, several of our cases also suggest that, when Congress authorizes injunctive relief, it implicitly requires that the traditional requirements for an injunction be met in addition to any elements explicitly specified in the statute. See United States v. Ernst & Whinney, 735 F.2d 1296, 1301 (11th Cir. 1984) ("[T]he decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy."). The Supreme Court strongly endorsed this latter approach in Hecht Co. v. Bowles, ruling,

> [I]f Congress desired to make such an abrupt departure from traditional equity practice as is suggested, it would have made its desire plain. Hence we resolve the ambiguities of [50 U.S.C. app. §§ 901, 925] in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect.

321 U.S. 321, 330, 64 S. Ct. 587, 592, 88 L. Ed. 754 (1944). Suffice to say that no overarching general principles are readily apparent, and we need not determine whether these cases are in conflict, or resolve any potential dispute here. Neither party contends that the injunction in this case was expressly authorized by a particular statute dealing with arbitration.[8]

---

[8] 9 U.S.C. § 4 permits a federal court to compel arbitration based on an arbitration clause in a written contract, but does not permit a court to enjoin arbitration based on an issue's nonarbitrability.

The final type of injunction is an injunction under 28 U.S.C. § 1651(a), the All Writs Act, which states, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Act does not create any substantive federal jurisdiction. See Brittingham v. Comm'r, 451 F.2d 315, 317 (5th Cir. 1971) ("It is settled that . . . the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground."). Instead, it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source. See Procup v. Strickland, 792 F.2d 1069, 1074 (11th Cir. 1986) (en banc) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). In allowing courts to protect their "respective jurisdictions," the Act allows them to safeguard not only ongoing proceedings,[9] but potential future

_____

[9] See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, 14 F.3d 1507, 1518 (11th Cir. 1994) (finding that injunction was not warranted under the All Writs Act because "the actions taken by the district court were not indispensable to reaching a disposition of the [pending] case"); Barton, 569 F.2d at 1359-60 (noting that the All Writs Act permits a district court to issue any order "necessary to enable the court to try the issues [in a pending case] to final judgment" and "develop the material issues and to bring them to a complete resolution").

12

proceedings,[10] as well as already-issued orders and judgments.[11]  See Wesch v. Folson, 6 F.3d 1465, 1470 (11th Cir. 1993) ("In addition, courts hold that despite its express language referring to 'aid . . . of jurisdiction,' the All-Writs Act empowers federal courts to issue injunctions to protect or effectuate their judgments.").

A court may grant a writ under this act whenever it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it," and not only when it is "'necessary' in the sense that the court could not otherwise physically discharge its . . . duties."  Adams v. United States, 317 U.S. 269, 273, 63 S. Ct. 236, 239, 87 L. Ed. 268 (1942).  Such writs may be directed toward not only the immediate parties to a proceeding, but to "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of

---

[10]  See Heckler v. Redbud Hosp. Dist., 473 U.S. 1308, 1313, 106 S. Ct. 1, 4, 87 L. Ed. 2d 677 (1985) (holding that a court may issue an injunction under the All Writs Act to "preserve the status quo while administrative proceedings are in progress . . . to prevent impairment of the effective exercise of appellate jurisdiction" (citing FTC v. Dean Foods Co., 384 U.S. 597, 603-04, 86 S. Ct. 1738, 1742, 16 L. Ed. 2d 802 (1966)); Barton, 569 F.2d at 1359 n.19 ("When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it.").

[11]  See United States v. New York Tel. Co., 434 U.S. 159, 171, 98 S. Ct. 364, 372, 54 L. Ed. 2d 376 (1977) (noting that the Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained").

13

justice, and encompasses even those who have not taken any affirmative action to hinder justice." United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977). It should be noted, however, that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Pennsylvania Bureau of Corr. v. United States Marshal Serv., 474 U.S. 34, 43, 106 S. Ct. 355, 361, 88 L. Ed. 2d 189 (1985); see also Clinton v. Goldsmith, 526 U.S. 529, 537, 119 S. Ct. 1538, 1543, 143 L. Ed. 2d 720 (1999) (holding that an injunction under the All Writs Act is an extraordinary remedy that "invests a court with a power that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law").

Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by some action or behavior. The requirements for a traditional injunction do not apply to injunctions under the

14

All Writs Act because the historical scope of a court's traditional power to protect

its jurisdiction, codified by the Act, is grounded in entirely separate concerns.[12]

---

[12] In a former Fifth Circuit case from 1971, Brittingham v. Comm'r, 451 F.2d 315, 318 (5th Cir. 1971), we came to the opposite conclusion, holding that an injunction under the All Writs Act "should be granted only upon a showing of irreparable harm and lack of an adequate remedy at law." Virtually none of the cases we cited, however, involved injunctions issued under the All Writs Act; the injunctions those cases did discuss were primarily "traditional" injunctions, predicated upon causes of action rather than threats to a court's jurisdiction. This holding, moreover, was pure dicta, as we had previously concluded that we lacked jurisdiction in the matter; it was also the third in a series of in-the-alternative holdings on the same question. See id. at 317 ("[E]ven if we could find some basis for independent jurisdiction upon which to posit an order under the All Writs Act, there are three sound reasons for the denial of relief in this case, wholly apart from any consideration of the merits of the matter."). Consequently, we are not bound to adhere to it. See Tagle v. Regan, 643 F.2d 1058, 1064 (5th Cir. 1981) ("[T]he prior panel rule does not extend to dicta . . . .").

We also came to the opposite conclusion in Weaver v. Florida Power & Light Co., 172 F.3d 771 (11th Cir. 1999), where we overturned a district court's decision to enjoin arbitration proceedings that involved matters the court had previously settled because the plaintiff had failed to satisfy the requirements for obtaining a "traditional" injunction. Specifically, we noted that the plaintiff did not show how she would suffer irreparable injury if the arbitration proceedings were permitted to proceed. Id. at 773. As discussed later, this opinion is squarely in conflict with our earlier holding to the contrary in Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067 (11th Cir. 1993) (per curiam), rev'd in part on other grounds, Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), in which we affirmed the grant of an injunction under the All Writs Act without any consideration whatsoever of the requirements for a traditional injunction. As such, under our prior panel rule we are not bound by Weaver. See Ginsburg, 362 F.3d at 1298 ("Where prior panels conflict, we follow the first one released . . . .").

Finally, V.N.A. of Greater Tift County, Inc. v. Heckler, 711 F.2d 1020 (11th Cir. 1983), can also be read as inconsistent with this proposition. Heckler never squarely addressed whether the four "traditional" injunction factors applied to injunctions under the All Writs Act, but simply seemed to assume that they did. We believe Heckler should be read as closely confined to its specific facts. See, e.g., United States v. Morado, 454 F.2d 167, 171-72 (5th Cir. 1972) ("Our review of the cases since Blumenthal and Kotteakos convinces us that Kotteakos has been closely restricted to its particular facts . . . ."). This reasoning calls to mind Justice Scalia's eloquent description of a judge engaging in the process of common-law adjudication: "distinguishing one prior case on the left, straight-arming another one on the right, high-stepping away from another precedent about to tackle him from the rear, until (bravo!) he reaches the goal—good law." Antonin Scalia, A Matter of Interpretation 9 (1997).

15

See United States v. New York Tel. Co., 434 U.S. 159, 174, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977) (affirming grant of injunction under the All Writs Act without regard to traditional four factors); De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 219, 65 S. Ct. 1130, 1573, 89 L. Ed. 1566 (1945) (stating, in reviewing a lower court's ruling concerning an injunction under the All Writs Act, that it is necessary to ascertain "what is the usage, and what are the principles of equity applicable in [this] case," without mentioning the traditional four injunction requirements); see also Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067 (11th Cir. 1993) (affirming grant of injunction under the All Writs Act without regard to traditional four factors), rev'd in part on other grounds Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002); Keishian v. Buckley, 752 F.2d 1513 (11th Cir. 1984) (same); In re Macon Uplands Venture, 624 F.2d 26, 28 (5th Cir. 1980) (same); Teas v. Twentieth Century Fox Film Corp., 413 F.2d 1263, 1266-67 (5th Cir. 1969) (same); see especially Barton, 569 F.2d at 1359 (setting forth the circumstances which an All Writs Act injunction may be issued without mentioning the traditional criteria for issuing an injunction).[13]

_____

[13]  We note, however, that a district court may not evade the traditional requirements of an injunction by purporting to issue what is, in effect, a preliminary injunction under the All Writs Act.  See Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare, 601 F.2d 199 (5th Cir. 1979).  In that case, the plaintiffs were a class of doctors seeking to enjoin the federal

16

Indeed, in a good number of cases in which we have approved the grant of writs under the Act, it is unclear how those traditional standards would even be applicable. See, e.g., Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1295 n.15 (11th Cir. 2002) (enjoining, under the All Writs Act, a party who had filed multiple and vexatious complaints against the same defendant before various

---

government from releasing a list of the names of all doctors who received money from Medicare and how much they were paid under that program. The district court issued an "ancillary writ of injunction" under the All Writs Act prohibiting the release of that list until the court reached a final ruling on the matter. It contended that the injunction was necessary to preserve its jurisdiction over the case because once the list was released, the case would be moot.

The writ issued in Florida Medical Association was perhaps the textbook definition of a preliminary injunction—it was issued to preserve the status quo and prevent allegedly irreparable injury until the court had the opportunity to decide upon issuing a permanent injunction. Id. at 202 (noting that the injunction issued under the All Writs Act "confers the same legal rights upon plaintiffs and imposes the same legal duties upon defendants as would a preliminary injunction"). At most, Florida Medical Association stands for the proposition that a court may not issue an order under the All Writs Act, circumventing the traditional requirements for a injunction, when a party is in reality seeking a "traditional" injunction. Id. (holding that where an injunction purportedly issued under the All Writs Act was, in reality, a preliminary injunction, "[it] must be the product of reasoned application of the four factors held to be necessary prerequisites before a preliminary injunction may be obtained"). Florida Medical Association does not purport to make the traditional requirements for an injunction applicable to all injunctions under the All Writs Act.

Occasionally, parties have sought "stays" pending appeal or certiorari of Acts of Congress under the All Writs Act where a lower court declined to enter a "traditional" preliminary injunction. Such applications are invariably denied because they are typically not "necessary or appropriate in aid of [a court's] jurisdiction." See, e.g., Turner Broad. Sys. v. FCC, 507 U.S. 1301, 1303, 113 S. Ct. 1806, 1807, 123 L. Ed. 2d 642 (1993) (Rehnquist, C.J., in chambers), quoting 28 U.S.C. § 1651(a). In such situations, the Court has also required that the right to have the act stayed be "indisputably clear." Id., quoting Communist Party of Indiana v. Whitcomb, 409 U.S. 1235, 93 S. Ct. 16, 34 L. Ed. 2d 40 (1972) (Rehnquist, J., in chambers). We have found no other cases involving injunctions under the All Writs Act where this requirement, concerning the "indisputably clear" nature of the right, is applied (and we hasten to add that it is similarly inapplicable where a party seeks a "traditional" injunction, rather than a stay based on the All Writs Act, against an act of Congress).

17

courts, attorney disciplinary bodies, and state agencies from filing any more complaints without the leave of the court); Henson v. Ciba-Geigy Corp., 261 F.3d 1065, 1070-71 (11th Cir. 2001) (overturning an injunction issued under the All Writs Act that removed to federal court a state-court action that had been settled through a settlement agreement in a prior federal case, without mentioning the traditional standards for granting injunctions).

Regarding pending proceedings, a court may enjoin almost any conduct "which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." Barton, 569 F.2d at 1359. It may also compel acts "necessary to promote the resolution of issues in a case properly before it . . . [or] facilitat[e] . . . the court's effort to manage the case to judgment," such as "issu[ing] orders to aid in conducting factual inquiries . . . [or] permit[ing] the use of interrogatories in habeas corpus proceedings." Id. (citations omitted).

One of the main exceptions to the district court's otherwise broad power to protect its jurisdiction is that, in general, it may not enjoin state court proceedings[14] to protect its ability to render judgment in ongoing in

---

[14] Throughout this opinion, when we refer to a federal court "enjoining state court proceedings," this should be understood as shorthand for enjoining a party or parties from pursuing particular claims in state court, rather than enjoining a state court or state judge from proceeding with a case.

personam proceedings.[15]  The simple fact that litigation involving the same issues

is occurring concurrently in another forum does not sufficiently threaten the

court's jurisdiction as to warrant an injunction under this act.

> In in personam actions, federal courts may not enjoin pending state
> proceedings over the same subject matter.  In fact, even if there is a
> danger that the state court might decide first and thereby deprive the
> federal judiciary from resolving the matter because of res judicata,

---

[15]  In Wesch v. Folsom, we held, "[A] federal court injunction of state court proceedings is necessary in aid of jurisdiction when necessary 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'"  6 F.3d at 1470 (quoting Atlantic Coast Line R.R., 398 U.S. at 295, 90 S. Ct. at 1747).  Read at face value, this seems to contradict our holding above, that federal courts may not enjoin parallel concurrent state court proceedings.  As discussed above, Atlantic Coast Line, upon which Wesch rests, expressly prohibits a district court from interfering, in most cases, with state court proceedings simply to protect its ability to render a judgment in a pending case free of potential res judicata or collateral estoppel effects.  Moreover, a close examination of the facts of Wesch reveals that this quote was implicitly limited to a state court's interference with a federal court's past consideration or disposition of a matter as embodied in an order or judgment, and did not extend to all ongoing matters.  Consequently, this isolated quote should not be taken at face value, but considered in the full context of the facts of the case, the precedent cited, and the general body of law discussed above that governs this statute.

In Wesch, a federal district court had entered an order in a class-action suit requiring the State of Alabama to redraw the lines of its congressional districts and mandated that upcoming congressional elections be held based on boundaries specified in a particular, interim redistricting plan, which created one majority-African-American district.  An African-American voter then filed a class action suit in state court, requesting that the court mandate a plan containing two majority-African-American districts.  The named plaintiff in the original federal class action asked the federal district court to enjoin the state court proceedings.  We affirmed the court's grant of an injunction under the All Writs Act, ruling that the state-court plaintiff "class brought suit in state court asserting claims substantially similar to those already decided by the final judgment of the three-judge district court in [the prior federal class action]."  Id. at 1471.  The district court was empowered to enjoin the state court proceedings because if the state court were permitted to issue its own contradictory order, it would "effectively strip all federal courts of the ability to meaningfully redistrict."  Id.  Thus, the federal court's power to enjoin the state proceedings was based on its need to protect its judgment, not to prospectively protect its ability to rule in ongoing litigation.

19

injunctions of state court actions still are not allowed.

Erwin Chemerinsky, <u>Federal Jurisdiction</u> § 14.2, at 842-43 (4th ed. 2003);[16] <u>see</u> <u>also</u> <u>Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers</u>, 398 U.S. 281, 295, 90 S. Ct. 1739, 1747, 26 L. Ed. 2d 234 (1970) (where "state and federal courts ha[ve] concurrent jurisdiction . . . neither [i]s free to prevent either party from simultaneously pursuing claims in both courts"); <u>Kelly</u>, 985 F.2d at 1069 (holding that the desire to "prevent[] the piecemeal litigation that occurs when parties simultaneously assert claims in several forums" is insufficient to warrant an injunction under the All Writs Act).

When particular property is before the district court, in contrast, such as when it is the subject of an <u>in rem</u> proceeding or in the custody of a bankruptcy trustee, the court may generally enjoin proceedings in any other court regarding that property. <u>See</u> <u>Macon Uplands Venture</u>, 624 F.2d at 28 (noting that, under the All Writs Act, the district court "had the power, in aid of its jurisdiction, to enjoin the debtor from filing further actions that touched on the subject of the res during

---

[16]  The Anti-Injunction Act expressly prohibits federal courts from enjoining proceedings in state court, but contains an exception for injunctions that are necessary to protect a federal court's jurisdiction. <u>See</u> 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court <u>except</u> as expressly authorized by Act of Congress, or <u>where necessary in aid of its jurisdiction</u>, or to protect or effectuate its judgments.") (emphasis added). Consequently, the question of whether proceedings in a state court threaten a district court's jurisdiction over concurrently ongoing proceedings arises under both the All Writs Act and Anti-Injunction Act, and the answer is necessarily the same for both.

the pendency of the Chapter XII appeal").

Similarly, this prohibition against enjoining state courts does not apply where a district court is seeking to protect the integrity or enforceability of existing judgments or orders, rather than its ability to prospectively issue one in a pending case. Proceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction. See, e.g., Teas, 413 F.2d at 1266-67 ("We cannot permit the prior [federal court] judgment to be rendered null and void through the ingenious expedient of a declaratory judgment [action in state court] concerning a different term of the same contract."). We have ruled, for example, that a district court may issue an injunction under the All Writs Act to prevent prosecution of a state court action that had already been settled under the terms of a federal settlement agreement. Henson, 261 F.3d at 1071 ("The district court . . . had the ready remedy of an injunction against prosecution of the action [in state court], properly issued under the All Writs Act.").

Keishian, 752 F.2d at 1513, is an example of enjoining state court proceedings to protect the integrity of a federal judgment. A federal district court awarded the plaintiff approximately $50,000, and the plaintiff "lev[ied]" the

21

defendant's Mercedez-Benz car with the court. Id. at 1515. The defendant sought

an injunction from a Georgia state court, claiming that the car was exempt from

levy under state law. The district court enjoined further proceedings concerning

the state court's injunction, and we affirmed. We ruled that "[t]he state court

proceeding was ancillary to the district court's order allowing a levy on [the

defendant's] automobile. . . . The district court's issuance of a temporary

restraining order was necessary to effectuate its jurisdiction . . . ." Id.

If the injunction in this case is to be upheld, it must be under the All Writs

Act. Having set forth the general principles governing injunctions under the Act,

we now turn to each of the two types of arbitrations the district court enjoined.

## III.

We begin by focusing on the court's ruling concerning the claims it had

previously ruled to be arbitrable. It held:

> There is no actual, justiciable controversy for the declaratory claims
> [that had previously been ruled arbitrable]. Plaintiffs have made clear
> to this Court, and the Defendants, that they do not wish to pursue any
> claims this Court has deemed arbitrable. Thus, there is no longer any
> controversy regarding those claims. The only justiciable controversy
> that exists between the parties relates to the Plaintiffs' nonarbitrable
> claims. . . . Because the claims have been dismissed, however, there is
> no controversy for the arbitration panel to resolve. Thus, an
> injunction is warranted.

> There are six main problems with this relatively terse ruling. First, it

22

assumes without discussion that the plaintiffs' attempt to dismiss their arbitrable claims under Rule 41(a) was, in fact, legally effective.  The plaintiffs filed a "Notice of Dismissal of Arbitrable Claims," stating

> [T]he Plaintiffs have chosen not to pursue these claims in arbitration because the burden of conducting numerous arbitrations while litigating this class action would cripple their ability to prosecute this action and result in Defendants attempting to obtain rulings from the various arbitrators which Defendants would argue have some preclusive effect in this proceeding. . . .  Accordingly, Plaintiffs notice dismissal of these claims to put to rest Defendants' repeated argument that Plaintiffs have not really abandoned these claims.  This dismissal is not an admission as to the merits of the claims, nor should it be construed to have any preclusive effect as to the claims remaining before this court. . . . [T]hey are being dismissed without prejudice . . . .

Notice of Dismissal of Arbitrable Claims, at 2 & n.2.  Neither the Notice of Dismissal nor the Supplemental Notice of Dismissal which the plaintiffs subsequently filed referred to any Federal Rule of Civil Procedure.  The rule that comes closest to potentially authorizing such a notice is Rule 41, which for the reasons described herein is inapplicable.

> Rule 41(a) states in relevant part:

> (1) [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an

23

adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

(2) By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Rule 41(a)(1)(i) is inapplicable because the defendants had already filed an answer by the time the plaintiffs filed their Notice of Dismissal of Arbitrable Claims. See Plains Growers, Inc. by Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250, 255 (5th Cir. 1973) ("[R]eading the rules governing dismissal by notice and dismissal by motion together, we conclude that it was intended by the rule-makers to permit dismissal against such of the defendants as have not served an answer or motion for summary judgment . . . ."). Similarly, Rule 41(a)(1)(ii) is inapposite because the notice was not signed by any of the defendants. Consequently, Rule 41(a)(2), governing dismissal by court order, is the only way this notice could have been legally operative. However, because the plaintiffs filed a "notice of dismissal" rather than a motion for dismissal with the court, there was nothing upon which the court was asked to rule, and it never formally issued an order dismissing any claims. Thus, none of Rule 41's provisions would have permitted the court to conclude that any claims had been dismissed.

24

The court's 2002 Injunction Order granting the plaintiffs' motion to enjoin arbitration refers back to the Notice of Dismissal, declaring that because "Plaintiffs have made clear to this Court, and to the Defendants, that they do not wish to pursue any claims this Court has deemed arbitrable[,] . . . there is no longer any controversy regarding those claims." This language, construed broadly, could be understood as an implicit dismissal of those claims, or at least a recognition of their dismissal.

Even reading the opinion in that manner, it leads to a second deficiency. "[T]he Rule speaks of voluntary dismissal of 'an action,' not a claim." State Treasurer v. Barry, 168 F.3d 8, 19 n.9 (11th Cir. 1999). Put simply, Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action. "A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)." 8 Moore's Federal Practice § 41.21[2], at 41-32; Barry, 168 F.3d at 19 n.9 ("Most likely, the proper way to drop a claim without prejudice is to amend the complaint under Rule 15(a)."); Ryan v. Occidental Petroleum Corp., 577 F.2d 298, 302 n.2 (5th Cir. 1978) ("Rule 41(a) speaks of dismissal of an action, and the plaintiff's elimination of a fragment of an action . . . is more appropriately

25

considered to be an amendment to the complaint under Rule 15."). Consequently, even construing the plainitffs' notice of dismissal as a motion for dismissal, and the district court's 2002 Injunction Order as somehow implicitly granting it, the court was not empowered to dismiss only certain claims under Rule 41.[17]

We could overlook this flaw and construe both the notice and the order as being brought under Rule 15 rather than Rule 41, which states that plaintiffs may amend their pleadings by leave of court, "and leave shall be freely given when justice so requires." We could further assume that, under this rule, the court was correct in allowing the plaintiffs to amend their complaint so as to remove the arbitrable claims. At this point, the district court's order runs into its third critical deficiency—it enjoined arbitration of the arbitrable claims because there was no "justiciable controversy" for the arbitration panel to resolve.

This holding is based on a fundamental misunderstanding of the case or controversy requirement. "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" Coral Springs St. Sys. v. City of Sunrise, No. 03-11497, 2004 U.S. App. LEXIS 11110, at *12 (11th Cir. June 7, 2004). Private arbitration panels are obviously not federal courts. See McDonald

---

[17] We understand this may no longer be a concern because the plaintiffs have since filed a superceding complaint omitting these claims.

26

v. City of West Branch, 466 U.S. 284, 288, 104 S. Ct. 1799, 1802, 80 L. Ed. 2d 302 (1984) ("Arbitration is not a 'judicial proceeding[.]'"); Six Clinics Holding Corp., II v. Cafcomp Sys., 119 F.3d 393, 398 (2d Cir. 1997) ("Arbitration is a private dispute resolution mechanism instituted pursuant to an agreement between the parties. It occurs predominantly outside, and in lieu of, court proceedings."); see also Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 395, 122 S. Ct. 2151, 2175, 153 L. Ed. 2d 375 (2002) ("There is no question that arbitration constitutes an alternative remedy to litigation."), overruled in part on other grounds by Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003). There would be nothing improper or illegal (and certainly not unconstitutional) about an arbitration panel resolving a dispute that would have to be dismissed from federal court because it did not constitute a case or controversy. Consequently, without further explanation, this reason does not seem to be a legitimate, much less sufficient, basis for enjoining arbitration.

Even if we assume that this requirement did apply to arbitration—perhaps based on the arbitration panel's voluntarily adopted rules—the district court's order runs into its fourth problem. The court's conclusion that the arbitrable claims no longer presented a live case or controversy because the plaintiffs constructively dropped them from their complaint is legally wrong. Unless the

27

plaintiff's motion or the district court's order stipulates otherwise, a claim dropped through a Rule 15 amendment—or, for that matter, an action dropped pursuant to Rule 41(a)—is dismissed without prejudice. See Barry, 168 F.3d at 19 ("Most likely, the proper way to dismiss a claim without prejudice is to amend the complaint under Rule 15(a)."); 8 Moore's Federal Practice § 41.40[5][c], at 41-138 ("One of the central purposes of Rule 41(a) is to permit the plaintiff to dismiss an action and start over again."). Indeed, the plaintiffs' notice of dismissal expressly declared that it was "without prejudice." Consequently, notwithstanding the plaintiffs dismissal, they could have refiled suit—in state or federal court, potentially in a myriad of jurisdictions—based on those claims at any time. As such, we cannot conclude that the defendants, in seeking declaratory relief through arbitration, were not pursuing a live case or controversy. Particularly given that the plaintiffs acknowledged that a dispute over their reimbursements from the defendants continued to exist, the defendants certainly had the right to invoke arbitration for declaratory relief to settle it.

Nevertheless, even giving the district court the full benefit of the doubt and assuming that justiciability concerns somehow did affect the arbitrability of the claims, the fact remains that the justiciability issue was for the arbitrators, and not the court, to resolve. In Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. Ct.

28

588, 154 L. Ed. 2d 491 (2002), the Supreme Court laid out the respective responsibilities of courts and arbitrators, absent an agreement to the contrary. Adopting the approach embodied in the Revised Uniform Arbitration Act of 2000, the Court held:

> [P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability. . . . [I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

Id. at 84-85, 123 S. Ct. at 592 (quotation marks and citation omitted).

We believe Howsam, rather than our earlier cases on this issue, is controlling. In 1993, we decided Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067 (11th Cir. 1993) (per curiam). The plaintiff had sued the defendant in federal court for violating various SEC rules. She dismissed some of her claims, and the court granted the defendant summary judgment on the rest. She then initiated an arbitration for state law claims arising out of the same facts as the federal suit. The defendant moved the district court in which the federal suit had been filed to enjoin the arbitration on res judicata grounds. We held that the All Writs Act "gives federal courts broad injunctive powers to protect their own

29

judgments," id. at 1069, and that res judicata was an appropriate reason for the court to enjoin the arbitration, see id. ("[C]ourts can decide res judicata . . . [because] [t]he issue is not just one of preventing the piecemeal litigation that occurs when parties simultaneously assert claims in several forums, but of protecting prior judgments."). Thus, in Kelly, we allowed a district judge to make a determination concerning the procedural arbitrability issue of "res judicata" despite the fact that the claims were substantively arbitrable (that is, covered by the parties' arbitration clause), and enjoin the arbitration based on that determination. We cited Kelly approvingly in a footnote in Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1449 n.23 (11th Cir. 1998) (Tjoflat, J.), and later reiterated its holding in Riccard v. Prudential Ins. Co. of Am., stating:

> The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts . . . .

307 F.3d 1277, 1295 n.15 (11th Cir. 2002) (emphasis added).

The next year, in Weaver v. Florida Power & Light Co., 172 F.3d 771 (11th Cir. 1999) (Tjoflat, J.), this court inadvertently reached the opposite result on a virtually indistinguishable set of facts. The plaintiff had sued her employer in

30

state court, claiming that her termination violated state and federal antidiscrimination laws. The employer removed the action to federal court based on federal question jurisdiction. The court dismissed certain claims and granted the employer summary judgment on the rest.

Before the court handed down its verdict, the plaintiff also initiated an arbitration alleging that the behavior at issue in the federal case violated her collective bargaining agreement. Once the court issued its rulings effectively ending the plaintiff's case, the employer moved the court to enjoin the arbitration on res judicata grounds. "The district court, concluding that an injunction was necessary to protect the integrity of its judgment, enjoined [plaintiff] . . . from proceeding with the arbitration . . . . [T]he district court found its authority to enter the injunction in the All Writs Act." Id. at 773 & n.3.

Ignoring Kelly, as well as the principle discussed above that an injunction under the All Writs Act need not meet the requirements of "traditional" injunctions, we held that the district court "abused its discretion by enjoining the arbitration proceedings." Id. at 773. We explained, "An injunction is an equitable remedy, available only when there is no adequate remedy at law. [The employer] has an adequate remedy at law—it can raise the issues of res judicata and waiver in the arbitration proceeding and, if its arguments are valid, have the arbitration

dismissed." Id.

The employer contended that raising the res judicata defense before the arbitrators was not an adequate remedy at law because it will "force it to undergo expensive and time-consuming adversarial proceedings that could be avoided by the issuance of an injunction." Id. at 774. We rejected this argument, stating that there was no reason to believe that having the arbitration dismissed by the arbitrators themselves would be more costly or inconvenient than having it enjoined by a federal court.[18] We further noted, "If, for some reason, the arbitrators were to ignore FPL's defenses, FPL would still have an adequate remedy at law, because under those circumstances a district court could vacate the arbitration award (or refuse to enforce it) based on the arbitrators' 'manifest disregard' of the law." Id. at 774 n.9. For these reasons, we vacated the injunction against arbitration.

Kelly and Weaver involve virtually indistinguishable material facts, yet

---

[18] This holding, of course, overlooks the fact that the parties had already spent time and money fully litigating the matter in federal court. We also note that the opinion reads, "We see no reason why proceedings before a district court would be more costly than proceedings before a board of arbitrators." Weaver, 172 F.3d at 774. This statement appears to have been inadvertently transposed; it likely should read "We see no reason why proceedings before a board of arbitrators would be more costly than proceedings before a district court." Given the respect we accord our prior judgments, we are necessarily reticent to engage in subsequent rewriting of judicial opinions to correct supposed errors, even such "plain" errors. Since, in any event, Weaver is not binding because it squarely conflicts with our prior panel opinion in Kelly, we need not resolve this question today.

32

arrive at diametrically opposed results. In situations such as this, we would normally be bound to follow Kelly, our earlier ruling. SEC v. Ginsburg, 362 F.3d 1292, 1298 (11th Cir. 2004) ("Where prior panel decisions conflict, we follow the first one released."). However, to the degree Kelly is inconsistent with the Supreme Court's intervening ruling in Howsam, we must adhere to Howsam. See United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004) ("We are authorized to depart from a prior panel decision based upon an intervening Supreme Court decision only if that decision actually overruled or conflicted with it." (quotation marks and citation omitted)).

Under the approach taken in the Supreme Court's subsequent decision in Howsam, both the Kelly and Weaver courts erred in considering the res judicata issue. Howsam states that, unless an arbitration agreement otherwise stipulates, a court is empowered only to determine the "substantive" issue of arbitrability—that is, whether a particular dispute falls within the scope of an arbitration clause—and the necessary threshold question of whether that clause is enforceable. See id. at 83-84, 123 S. Ct. at 592 ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (quotation marks and citation omitted)); see also Green Tree Fin.

Corp. v. Bazzle, 539 U.S. 444, 123 S. Ct. 2402, 2407, 156 L. Ed. 2d 414 (2003) (holding that, unless an arbitration agreement stipulates otherwise, a court's role is almost exclusively to adjudicate "the validity of the arbitration clause [and] its applicability to the underlying dispute between the parties"). Gateway arbitrability issues other than these (which the Howsam Court seems to have designated "procedural" arbitrability issues) are generally for the arbitrators themselves to resolve. Generally speaking, courts are empowered to resolve disputes that solely involve whether a particular claim should be resolved in court or arbitration. See Musnick v. King Motor Co. Of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) (holding that courts should "decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided"). Arbitrators, are the other hand, are empowered, absent an agreement to the contrary, to resolve disputes over whether a particular claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations, laches, justiciability, etc.), or has any substantive merit whatsoever. Consequently, neither the Kelly nor Weaver courts had the power to enjoin arbitration on res judicata grounds because res judicata was for the arbitrator to decide in the first instance.

In this Part, we are addressing claims that the district court had previously

34

ruled arbitrable pursuant to valid arbitration clauses; having made these threshold substantive arbitrability determinations, the court's only remaining duty was to stay federal court proceedings regarding those claims or allow the plaintiffs to amend their complaint to remove those claims. It did not have the right to make further determinations concerning arbitrability, including rulings on justiciability. Once the issues were deemed to be within the scope of the arbitration clause, all further determinations concerning their arbitrability were for the arbitrators. Consequently, the court erred in preventing the case from reaching them.

This is similar to Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545 (11th Cir. 1993), in which we held that arbitrators, rather than a district court, should resolve standing questions, notwithstanding the fact that standing is a justiciability issue. We see no reason to treat any differently a dispute over the existence of a "case or controversy," which is also a justiciability issue, see DOC v. United States House of Representatives, 525 U.S. 316, 329, 119 S. Ct. 765, 772, 142 L. Ed. 2d 797 (1999) ("Thus, the only open justiciability issue in this case is whether appellees satisfy the requirements of Article III standing.").[19]

---

[19] Of course, if a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel. While the absence of a case or controversy requires a court to abstain from mandating arbitration, this does not give it the right to enjoin arbitration.

Finally, if we assume that the district court had been correct both in determining the justiciability of the arbitrable claims and in deeming them nonjusticiable due to the lack of case or controversy, the district court still erred in enjoining arbitration under the All Writs Act. As discussed in the previous part, the Act allows district courts to issue injunctions only "in aid of their jurisdiction." The court's brief discussion concerning the arbitrable claims did not even begin to explain how allowing an arbitration concerning arbitrable issues to proceed—even if those claims were nonjusticiable—threatened or undermined either its jurisdiction over a pending matter (the remaining nonarbitrable claims), or any previous orders it entered.

It could be argued that the court was protecting its jurisdiction over the nonarbitrable claims by enjoining arbitration of the arbitrable claims because such arbitration could have a collateral estoppel impact on the ongoing federal litigation. However, this is far from clear. See Dean Witter, 470 U.S. at 223, 105 S. Ct. at 1243 ("[A]rbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings."); Greenblatt v. Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1361 (11th Cir. 1985) ("[A]t least with respect to an important, nonarbitrable federal claim, a federal court should be hesitant to

preclude the litigation of the federal claim based on the collateral estoppel effects of a prior arbitration award. [Precedent] indicate[s] a case-by-case approach to determining the collateral estoppel effects of arbitration on federal claims . . . .").

Moreover, it would seem odd (though not impossible) to conclude that a district court could enjoin arbitrations out of fear of possible res judicata effects, but not in personam state court proceedings, as discussed above, see supra Part II. As discussed earlier, the All Writs Act and Anti-Injunction Act allow federal courts to enjoin state court proceedings when necessary to protect the federal court's jurisdiction. However, the universal interpretation of these statutes is that a federal court may not enjoin state court proceedings simply because parallel in personam proceedings are being pursued concurrently in federal court. This restriction must be based on the premise that state court proceedings arising from the same facts or claims as pending in personam federal proceedings do not threaten the federal court's jurisdiction over its case, despite the threat of res judicata or collateral estoppel from the state court case. Given that parallel state court proceedings may peacefully co-exist with in personam federal proceedings, it is difficult to understand why a parallel arbitration could not. Consequently, it would seem that the potential res judicata effect that the arbitration of arbitrable claims could have on a pending in personam federal case does not in itself permit

a federal court to enjoin such arbitration.

For these reasons, we are forced to overturn the district court's injunction against arbitration of the arbitrable claims.

## IV.

Turning to the nonarbitrable rulings, we similarly find that the district court abused its discretion in granting an injunction barring arbitration of such claims. At first glance, it is unclear how the defendants—the parties enjoined—could possibly be harmed from arbitrating claims that the court had expressly ruled were nonarbitrable. Based on this presumption, the district court applied the four traditional criteria for awarding preliminary injunctive relief and found that the plaintiff had met its burden:

> First, there is a substantial likelihood of success on the merits. This Court has already deemed those claims that remain non-arbitrable. Thus, Plaintiffs' success on the merits is guaranteed. Second, Plaintiffs would suffer irreparable harm by being forced to arbitrate non-arbitrable issues. Third, the balancing weights heavily in favor of Plaintiffs because of their guaranteed success. Finally, although the Court recognizes the strong public interest in favor of arbitration, this Court has also already considered those factors and made the determination that these claims can not be arbitrated. It is therefore in the public interest to avoid needless litigation and expense of arbitration proceedings and move the case forward.

> This reads as if the court were granting a preliminary injunction in some

ongoing case. While much of what the district court wrote sounds reasonable, upon further reflection it does not make much sense. The court referred to the plaintiffs' likelihood of success on the merits, which raises the question, the merits of what? The plaintiffs had not instituted an independent lawsuit seeking permanent injunctive relief against the defendants from arbitrating any claims; the plaintiffs' underlying claims in the main lawsuit in which this injunction was issued concerned the defendants' system for reimbursing them for their professional services. The merits of those claims—that is, whether the plaintiffs are entitled to receive monetary damages in federal district court because the defendants had not reimbursed them enough—have nothing to do with whether the plaintiffs can enjoin the defendants from engaging in a legally null and void arbitration concerning those claims.

The only new "claim" the plaintiffs made in their motion for an injunction was that some of the claims the defendants sought to arbitrate were nonarbitrable. As noted earlier, however, "wrongful arbitration" is not a cause of action. Thus, even if the plaintiffs were correct in stating that the claims at issue were nonarbitrable, there is still no cause of action for which they would have a likelihood of success. Put another way, the plaintiffs had not stated any legally cognizable claim upon which they could have any likelihood of success on the

39

merits at all.  Thus, even viewing this ruling on its own terms, the court misapplied

the "likelihood of success" prong for granting injunctive relief.[20]

This point is closely interwoven with the more fundamental shortcoming in

the district court's 2002 Injunction Order; it applied the traditional standards for

granting an injunction to what could only be reasonably understood as a motion

for an injunction under the All Writs Act.  The conceptual difficulty of even

attempting to apply the likelihood of success factor to this motion reinforces our

earlier point about how the factors for granting a traditional injunction do not

apply to grants of injunctive relief under the Act, where we consider only whether

the injunction was issued "in aid of [the district court's] jurisdiction[] and

---

[20]  We also note that the district court's conclusion regarding irreparable injury was patently wrong.  Even if the defendants were permitted to proceed with arbitrating nonarbitrable claims, it is unclear how the plaintiffs would suffer any injury at all, much less irreparable injury.  The plaintiffs would not have to participate in the defendants' arbitration proceedings.  Even if the defendants obtained a default verdict against them, they would be unable to have it enforced in a district court because a district court is empowered to vacate arbitral awards where the "arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it.  Consequently, while the defendant is free to initiate whatever private arbitration proceedings he wishes, a plaintiff need not be troubled by them because they are essentially legal nullities from the start.

Even if a plaintiff does decide to raise the justiciability issue before the arbitration panel, the time and expense he incurs in doing so simply does not constitute irreparable injury.  "Mere injuries, however substantial, in terms on money, time and energy necessarily expended in the absence of a stay, are not enough."  Sampson v. Murray, 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974) (quotation marks and citation omitted).  Consequently, not only was the district court wrong in applying the traditional factors to what could only be understood as an injunction under the All Writs Act, but it applied at least two of those four factors—likelihood of success on the merits and irreparable injury—incorrectly.

agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

The plaintiffs contend that the injunction against arbitration of the nonarbitrable claims was necessary to protect the integrity of both the district court's past ruling that the claims were nonarbitrable, as well as the pending district court proceedings on those claims. Neither argument is persuasive.

The district court's 2000 Arbitration Order, in designating certain claims as nonarbitrable, simply held that the plaintiffs could not be compelled to arbitrate them. This order did not purport to prohibit arbitration of those claims; instead, it merely rendered any such arbitration a legal nullity. By purporting to proceed with the arbitration of nonarbitrable claims anyway, the defendants were not in any way undermining, circumventing, or nullifying the court's 2000 Arbitration Order; they were instead merely engaging in a pointless, fruitless exercise.

Similarly, if an issue is nonarbitrable, the arbitrators lack jurisdiction over it. See Int'l Ass'n of Machinists & Aerospace Workers v. Texas Steel Co., 639 F.3d 279, 281 (5th Cir. 1981) ("'Arbitrability' is said to involve the jurisdiction of the arbitration panel . . . ."). Consequently, even if the arbitration concluded first, and it were possible for an arbitration to have a collateral estoppel effect on pending federal proceedings—an issue we need not reach here today—this particular arbitration would not affect the ongoing federal class action. Collateral

estoppel cannot apply unless the panel that issued the earlier decision had jurisdiction to adjudicate that issue. See Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) ("[A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.") (emphasis added). Moreover, as discussed earlier, even if the defendants were to obtain an award from the arbitrators, they would be unable to enforce it in any federal court. See 9 U.S.C. § 10(a)(4) (noting that a federal district court may vacate an arbitration award "where the arbitrators exceeded their powers"). It is precisely because arbitrating nonarbitrable claims is such a pointless endeavor that it does not threaten or undermine either the district court's existing order or its jurisdiction over the pending cases. Consequently, the court was not empowered to enjoin arbitration of the nonarbitrable claims under the All Writs Act. The defendants remain free to arbitrate the nonarbitrable claims in what will be nothing more than a moot court session.

## V.

For these reasons, the district court's injunction, in its entirety, is REVERSED.