In re CONTINENTAL BROKER–
DEALER CORP., Debtor.

Richard L. Stern, as Chapter 7 Trustee
of Continental Broker–Dealer
Corp., Plaintiff,

v.

Gunnallen Financial, Inc. and
M. Carleton Boothe,
Defendants.

Bankruptcy No. 04–85318–JBR.
Adversary No. 807–08003–JBR.

United States Bankruptcy Court,
E.D. New York.

May 9, 2007.

Zeichner Ellman & Krause, LLP, by Nathan Schwed, Esq., New York, for Plaintiff, Richard L. Stern as Chapter 7 Trustee of the estate of Continental Broker–Dealer Corp.

Paduano & Weintraub LLP, by Anthony Paduano, Esq., New York, for Defendant, GunnAllen Financial, Inc.

Wilson Elser Moskowitz Edelman & Dicker, LLP, By Jeffrey L Wilson, Esq., New York, for Defendant, M. Carleton Boothe.

## MEMORANDUM DECISION AND OR-DER ON MOTION OF DEFEN-DANT, GUNNALLEN FINANCIAL, INC. TO STAY ADVERSARY PRO-CEEDING AND COMPEL ARBI-TRATION

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court for hearing (the "Hearing"), on the Motion of Defendant, GunnAllen Financial, Inc. ("GunnAllen") to stay this adversary proceeding and to compel arbitration [docket # 10–12] (the "Motion") to which the Plaintiff, Richard L. Stern as Chapter 7 Trustee of the estate of Continental Broker–Dealer Corp. ("Plaintiff" or the "Trustee") objected [# 18–19]. At the conclusion of the Hearing the Court took under submission GunnAllen's Motion. As set forth more fully below, the Court will stay this adversary proceeding and compel arbitration before the National Association of Securities Dealers [1] ("NASD") to determine the issues raised in the adversary proceeding and to fix the amount of damages, if any.

## BACKGROUND

GunnAllen is a full service brokerage and investment banking firm with a nationwide presence of independent branch offices. It is registered to conduct securities business in all 50 states and is a member of the NASD. Defendant, M. Carleton Boothe ("Boothe") is a registered securities broker, a former employee and "associated person" [2] of Continental Broker–Dealer Corp. (the "Debtor"), and a current independent affiliate of GunnAllen. The Debtor is a former member of the NASD. Boothe began employment with the Debtor, who at that time was a member of the NASD, in New York in 1992 and became an "associated person of a member" of the NASD [3]. Sometime during 2000 the Debtor and Boothe discussed Boothe's relocating to Boca Raton, Florida to work at the Debtor's office there. Boothe resigned from the Debtor in January 2004 and joined GunnAllen [4]. In June 2004, following an investigation by the NASD and the U.S. Securities and Exchange Commission, the Debtor was expelled from the securities industry. The Trustee has file an adversary proceeding against GunnAllen and Boothe and asserts that they essentially raided the Debtor's business by inducing away the Debtor's employees and customers.

## DISCUSSION

▇▇▇ Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a federal court is required to enforce arbitration agreements and to stay litigation that contravenes them. *See* 9 U.S.C. §§ 2 & 3. The FAA affords no latitude for discretion.

---

1. The NASD is a self-regulating organization of securities dealers created under the authority of the U.S. Securities and Exchange Commission.

2. The NASD defines an associated person as "any person engaged in the investment banking or securities business who is directly or indirectly controlled by an NASD member, whether or not they are registered or exempt from registration with NASD. An associated person includes, but is not limited to, every sole proprietor, partner, officer, director, or branch manager of any NASD member." NASD Glossary of Arbitration Terms.

3. The NASD defines an associated person as "any person engaged in the investment banking or securities business who is directly or indirectly controlled by an NASD member, whether or not they are registered or exempt from registration with NASD. An associated person includes, but is not limited to, every sole proprietor, partner, officer, director, or branch manager of any NASD member." NASD Glossary of Arbitration Terms.

4. Boothe's employment agreement with the Debtor and the circumstances regarding his departure from the Debtor are not relevant here.

*See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Although "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), arbitration is indicated unless it can be said "with positive assurance" that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 65 (2d Cir.1996).

As a member of the NASD the Debtor[5] and GunnAllen[6] both agreed with the NASD to be bound by the rules and regulations of the association, including the NASD's Code of Arbitration Procedure (the "NASD Code"). NASD recently amended the NASD Code. The new code (the "New Code") applies to "claims filed" on or after April 16, 2007[7]; the old code (the "Old Code") applies to "cases filed" prior to April 16, 2007. Although it appears that the New Code applies to this matter[8] despite GunnAllen's reference to a section of the Old Code,[9] under either version, arbitration is mandated.

Rule 13200(a) of the New Code is clear that a dispute "aris[ing] out of the business activities of a member or an associated person and is between or among ... Members and Associated Persons" *must be arbitrated.* Moreover the definition of "Member" in the New Code includes former members by noting that even members who membership has been terminated or cancelled fall within this category. NASD Code of Arbitration Rule 13100(o). NASD Code of Arbitration Rule 13100(r). Thus under the New Code this matter must be sent to arbitration.

■ Even if the Old Code applies, this matter still must be arbitrated. Plaintiff argues that this dispute is not subject to NASD arbitration since the Debtor is a former member no longer subject to the NASD Code[10] which he claims only applies to current members. Plaintiff relies upon an unreported case from the New York Western District Court. *Gaghich v. Prudential Ins. Co. of America,* 1997 WL 128269 (W.D.N.Y.1997) for this proposition. The *Gaghich* Court imposed a literal reading of the Old Code in concluding that a former member could not compel a former employee to arbitrate. This Court rejects Plaintiff's argument. The better approach, adopted by the majority of courts and clearly mandated by the Old Code, is that NASD membership status for purposes of determining the application of the NASD's arbitration requirement must be determined at the time of the events

---

**5.** Similarly, Boothe upon accepting employment with an NASD member became as an associated person of a member and agreed with the NASD to be bound by the regulations of the association, including the NASD Code.

**6.** GunnAllen was also a member in 2003 when the event complained of occurred.

**7.** GunnAllen has not yet filed a claim with the NASD.

**8.** The New Code defines a "claim" as "an allegation or request for relief" and a "claimant" as "a party that files a statement of claim" that initiates an arbitration under Rule 13302.

**9.** Although GunnAllen does not address the existence of the Old and New Codes, it cites to Rule 10101, a section that exists only under the Old Code.

**10.** References in the parties pleadings are all to the Old Code. While the Court is of the opinion that the New Code, which clearly mandates arbitration here, applies the Court recognizes that there is a cognizable argument that the Old Code applies to this dispute. Accordingly, the Court will also analyze Plaintiff's argument under the Old Code which leads to the same conclusion.

giving rise to the dispute occurred. GunnAllen cites to an Eleventh Circuit decision in support of this proposition. *Riccard v. Prudential Ins. Co.* 307 F.3d 1277 (11th Cir.2002). This Court agrees with the holding of the Eleventh Circuit that Debtor's status as an NASD member, for the purpose of determining the applicability of the NASD's Code, should be determined at the time of the events leading to the dispute or claim or when the dispute or claim arose. As stated by the Eleventh Circuit,

> [w]e think the key is that the rule explicitly includes among the claims, disputes, and controversies subject to mandatory arbitration those between a member and associated person "arising out of the . . . termination of employment of such associated person(s) with such member." That indicates to us that the status of association with a member must be determined at the time of the events giving rise to the dispute or claim. If not, a termination of employment could never be arbitrated, because from the time the termination occurred the employee (no longer controlled by his employer) would no longer be a person associated with a member. This would defeat the rule's clear intent that termination of employment claims be subject to mandatory arbitration after an employee is terminated. Of course, the question here is when [the former members] membership status is to be judged, but we do not see why the NASD rule would make associated person status count to enable insistence on arbitration if that status existed at time of the events (such as a termination of employment) giving rise to the dispute or claim, but not make membership count if membership existed at that same time.

*Id.* at 1288. The *Riccard* decision was recently cited with approval by the New York Southern District Court in *Beer v.*

*Nutt,* 2007 WL 13100 (S.D.N.Y. Jan.3, 2007)(No. 06 Civ. 9424).

The United States District Court for the Western District of Missouri also addressed and rejected the argument that NASD status is determined at the time suit was filed, writing

> if the Court were to evaluate Beard's status under NASD regulations at the time the lawsuit was initiated, it would allow plaintiffs like Beard to avoid the mandatory arbitration provision of the NASD regulations simply by canceling their membership with NASD prior to filing suit for their grievances. Such action would thwart the mandatory arbitration provision of the NASD regulations.

Furthermore, the language of the Code of Arbitration Procedure suggests that the Code contemplates suits by former associated members. Rule 10216(f) provides in relevant part that "[i]f a member or a current or former associated person of a member files in court a claim against a member or a current or former associated person of a member that includes matters that are subject to mandatory arbitration, either by the rules of the association or by private agreement, the defending party may move to compel arbitration of the claims that are subject to mandatory arbitration" (emphasis added). Also, Rule 10101 and Rule 10201 of the NASD Code of Arbitration Procedures both refer to arbitration being available or mandatory in disputes ". . . arising out of the employment or termination of employment of associated person[s] with any member . . . ." Once an associated person is terminated, he would no longer be an associated person. Yet, the regulations suggest that arbitration is still available and under Rule 10201 mandatory.

*Beard v. American Exp. Financial Advisors, Inc.,* 2001 WL 1231003, *4–5, (W.D.Mo. July 19, 2001)(No. 01–4030–CV–C–5). Given the language of the Old Code, the Court finds that Rule 10201 mandates that the Debtor as a former member and GunnAllen as a member must arbitrate their dispute before the NASD.[11]

The Trustee urges the Court to consider the Affidavit of Michele D. Collins ("Collins"), Associate Director of Case Administration at NASD, as support for his position that a former member cannot be compelled to arbitrate. The Court notes that the Trustee had moved for permission to examine the NASD prior to responding to the Motion. The Court denied the Trustee's Motion on the basis that there was no need for parole evidence as the Old Code is not ambiguous. Further, the Court was concerned that even if the examination were allowed, the witness would not be a person who played a direct role in the rule-drafting process and therefore, could not speak as to the framer's intent.[12] For the same reasons that the Court rejected the Trustee's request to examine the NASD prior to the hearing on the Motion, the Court rejects Collin's Affidavit. Moreover, Collins' Affidavit executed just two days after the New Code became effective and which purports to interpret the New Code fails to apply a plain reading of that document which clearly requires arbitration in this situation.

Finally, although not directly raised by GunnAllen or Plaintiff, the Trustee's claims in this case against Boothe must also be arbitrated before the NASD. The parties are referred to the Court's Decision in the Trustee's separate adversary proceeding against Boothe (Adv.Proc. No. 06–8370–JBR) issued simultaneously herewith for a discussion of the Court's rationale which the Court adopts here by reference. In addition to the rationale set forth in the Court's decision in the Boothe adversary proceeding, the Court notes that the claims against GunnAllen and Boothe are so inextricably intertwined that judicial economy mandates that these claims be heard in one forum the NASD.

## CONCLUSION

The parities to this adversary proceeding are both subject to the NASD Code which under the FAA requires that this dispute must be arbitrated before the NASD. Based on these findings and the applicable statutory and case law, the Motion is GRANTED and the Court hereby stays this adversary proceeding and directs the all parties to this adversary proceeding to proceed with arbitration before the NASD. Upon a final decision of the NASD arbiters the parties are directed to notify this Court in writing of same. Any party seeking to enforce an arbitration order shall seek appropriate relief in this Court.

So Ordered.

---

**11.** Given the Court's ruling that arbitration is mandatory here and compelled by the FAA, the Court will not address GunnAllen's arguments regarding abstention.

**12.** It appear that Collins, who has only been employed by the NASD Dispute Resolution, Inc. since July 2001 had no role in the creation of the Old Rules which were promulgated in 1996.